## READ v. DINGESS et al.

### (Circuit Court of Appeals, Fourth Circuit. February 7, 1894.)

### No. 53.

1. EQUITY JURISDICTION—REMEDY AT LAW—FORFEITURE OF LANDS.
    Lands were forfeited through failure to enter same for taxation. Const. W. Va. art. 13, § 6. *Held*, that a deed from the state would not be set aside upon the ground that the complainant had been deprived of his property without "due process of law," because the forfeiture is in that event a nullity, and complainant has an adequate remedy at law.

2. TAXATION—FORFEITURE—REDEMPTION.
    The privileges given to former owners of forfeited lands by the West Virginia statute of February 21, 1887, and prior acts of like character, cannot, by any rule of construction, be enlarged into an absolute right of redemption, but, on the contrary, are mere matters of grace on the part of the state, and are confined by the terms of the act to (1) a right to obtain from the state the excess of purchase money, in case the lands have been sold by it; and (2) the right to intervene by petition at any time pending proceedings for sale, and redeem by paying all taxes and costs. Hence, after the sale is complete. the former owner has no interest whatever therein. McClure v. Maitland, 24 W. Va. 576, followed.

3. SAME—EQUITY JURISDICTION.
    Even if the school commissioner of the state sells forfeited lands as "waste lands," when he has no right to do so, the former owner has no rights therein which he can enforce in a court of equity; for the sale is either void, in which case there is an adequate legal remedy, or it is merely irregular, in which case relief must be had in the state court in which the proceedings for sale were had.

4. EQUITY—LACHES.
    A court of equity will not be disposed to exercise any merely discretionary powers in order to relieve from statutory forfeiture lands which for 30 years have paid no taxes, and have not been reported for taxation

as required by the laws, especially when the owner does not now offer to pay the same, or aver an intention to do so, but merely seeks to set aside certain conveyances, which he alleges will embarrass him in the exercise of his right to redeem, in case he should elect to do so.

Appeal from the Circuit Court of the United States for the District of West Virginia.

Bill by John R. Read, trustee, against Zatto C. Dingess. Case heard below on bill and demurrer, and bill dismissed. Dingess having died pending the appeal, his heirs were substituted.

Z. T. Vinson and J. S. Clarke, for appellant.

N. Dubois Miller, James H. Ferguson, and J. F. Brown, for appellee.

Before FULLER, Circuit Justice, and SEYMOUR and SIMONTON, District Judges.

SEYMOUR, District Judge. Complainant alleges, among other things, (which it is unnecessary to the opinion to state,) a grant, of date January 21, 1796, of 100,000 acres of land in Virginia, within the boundaries of what is now West Virginia, lying mainly in Logan county, in said state; a forfeiture of the tract under the taxing laws of Virginia, whereby it became vested in the president and directors of the literary fund; an act of the Virginia legislature of March 15, 1838, by which the title of the president and directors of the literary fund was transferred to and vested in one Dumas, in trust for the estate of the former owners of the tract and certain creditors, discharged from all taxes due before 1838; the due appointment of successive trustees of the trust, the last of whom is the complainant, and payment of taxes by trustees for the years 1840–54, inclusive. He states that the land was not charged to the trust with taxes from 1857 to 1860, and that it has never been entered for taxation on the land books of the counties in which it is situated since the organization of the state of West Virginia. (June 20, 1863.) He further alleges that, by reason of such fact, it became liable to be sold by the commissioner of school lands for the benefit of the school fund; that, during the years 1882–88, such commissioner sold various parts of it to defendant, as waste and unappropriated land; and that the school commissioner has since made deeds to him of the same. He further alleges that he has ever since had a right, under the laws of West Virginia, to redeem said land, upon payment of the taxes in arrears, which right, he avers, can only be divested by a sale for the benefit of the school fund, in conformity with the law providing for such sales, and that no such proceedings have been had. He avers, however, that, until the deeds from commissioner to complainant are set aside, he is embarrassed in the exercise of that right. He alleges that the commissioner sold the land as waste and unappropriated, without notice to him, for the express purpose of defeating his redemption. His prayer is that the deeds to defendant be set aside and annulled, and that he be put in possession of the land.

The demurrer, among other grounds of demurrer, assigns the following:

"Third. Because it appears from the said bills of the said plaintiff, and each of them, that under the constitution of the state of West Virginia, and the laws in force in said state, the plaintiff, John R. Read, has no right to redeem the said 100,000 acres of land, or any part or parcel of the said land, and especially the parts or parcels of the 100,000 acres in question in this suit, the same having been absolutely forfeited, first to the state of Virginia and to the president and directors of the literary fund, and then to the state of West Virginia, and became the absolute property of said state, for the failure of said Robert E. Randall, trustee, and of the plaintiff, to cause the said tract of 100,000 acres, or any part of it, to be entered and charged with taxes on the land books of said Logan county, or of any other county in West Virginia, in the manner prescribed by law, for more than five successive years prior to the year in which this suit was brought, and in fact for any year or years from the creation of West Virginia to the present time, to wit, A. D. 1892; and because it appears by said bills, and each of them, that no taxes have, in any view of the case, been paid on said 100,000 acres of land, by either of the trustees named in said bills, and each of them, since the year 1855.

"Fourth. Because it appearing by the said bills, and each of them, that, the lands therein referred to having been absolutely forfeited to the state of West Virginia, the plaintiff has no right or claim of property therein, and consequently has no title upon which to maintain the present bill."

The constitution of West Virginia (article 13, § 6) provides as follows:

"It shall be the duty of every owner of land to have it entered on the land books of the county in which it, or a part of it, is situated, and to cause himself to be charged with the taxes thereon, and pay the same. When for any five successive years after the year 1869, the owner of any tract of land containing 1,000 acres or more, shall not have been charged on such books with state tax on said land, then by operation hereof, the land shall be forfeited and the title thereto vest in the state. But, if, for any one or more of such five years, the owner shall have been charged with state tax on any part of the land, such part thereof shall not be forfeited for such cause."

The legislature of West Virginia has passed several acts providing for the forfeiture of land not entered on the proper books for taxation. The earliest of them is the act of March 4, 1869, the seventh section of which is given:

"(7) It shall be the duty of any person owning any real estate to cause the same to be entered on the land books of the proper assessor and charged with the state taxes thereon not charged to the owner, for the year eighteen hundred and thirty-two, or any year thereafter, heretofore or hereafter, not released, paid or in any manner discharged, which were and shall remain properly chargeable thereon. When any person owning real estate has not, or shall not have for five successive years, been charged on such books with such taxes on such real estate, the same, and all the title, right and interest of the owner, legal and equitable thereto, shall without any proceeding be absolutely forfeited to and vested in this state. Provided, however, that such owner may, within one year after the passage of this act, cause such real estate to be charged with such taxes, chargeable for any such years heretofore, and thereby prevent a forfeiture for the failure so to charge the taxes for such years."

The constitutional provision is of later date than this statute. The new constitution of West Virginia, which contains it, was adopted in 1872. At the session of the legislature following the adoption of the new constitution, it passed an act to carry into

effect article 13, § 6, of the constitution, (Acts 1872–73, c. 134.) The law upon the subject has been certified, and appears in chapter 105 of the Code of West Virginia, (Warths' Code, p. 639, Ed. 1884.)

The right of redemption, as it existed at the commencement of this action, appears in the act of February 21, 1887, as follows:

"(14) Any owner may, within the time aforesaid, file his petition in the said circuit court, stating his title to such lands, accompanied with the evidences thereof, and upon full and satisfactory proof that at the time the title to said lands vested in the state he had a good and valid title thereto, legal or equitable, superior to any other claimant thereof, such court shall order the excess mentioned in the next preceding section to be paid to such owner; and upon a properly certified copy of such order being presented to the auditor, he shall draw his warrant on the treasury in favor of such owner, or his personal representative, for such excess. At any time during the pendency of the proceedings for the sale of any such land as hereinbefore mentioned, such former owner, or any creditor of such former owner of such land having a lien thereon, may file his petition in said circuit court as hereinbefore provided, and asking to be allowed to redeem such part or parts of any tract of land so forfeited, or the whole thereof, as he may desire, and upon such proof being made as would entitle the petitioner to the excess of purchase-money hereinbefore mentioned, such court may allow him to redeem the whole of such tract if he desire to redeem the whole, or such part or parts thereof, as he may desire, less than the whole, upon the payment into court, or to the commissioner of school lands, all costs, taxes and interest due thereon, as provided in this chapter, if he desire to redeem the whole of such tract; or if he desire to redeem less than the whole of such tract, upon the payment, as aforesaid, of so much of the costs, taxes, and interest due on such tract as will be a due proportion thereof for the quantity so redeemed. But if the petition be for the redemption of a less quantity than the whole of such tract, it shall be accompanied with a plat and certificate of survey of the part or parts thereof sought to be redeemed. Whenever it shall satisfactorily appear that the petitioner is entitled to redeem such tract, or any part or parts thereof, the court shall make an order showing the sum paid in order to redeem the whole tract, or the part or parts thereof which the petitioner desired to redeem and declaring the tract or part or parts thereof, redeemed from such forfeiture, so far as the title thereto was in the state immediately before the date of such order; which order, when so made, shall operate as a release of such forfeiture so far as the state is concerned, and of all former taxes on said tract or part or parts thereof so redeemed, and no sale thereof shall be made. If the redemption be of a part or parts of a tract, the plat or plats and certificate of the survey thereof, hereinbefore mentioned, together with a copy of the order allowing the redemption shall be recorded in a deed book in the office of the clerk of the county court. Provided, that such payment and redemption shall in no way affect or impair the title to any portion of such land transferred to and vested in any person as provided in section 3 of article 13 of the constitution of this state."

This is substantially a re-enactment of the law in force when the proceedings in the circuit court to sell were instituted. The later legislation of the state, (chapter 94, Acts 1891, and chapter 24, Acts 1893,) gives no additional rights or privileges to plaintiff. On the contrary, it materially limits his right to redeem. The act of 1893 provides that, if lands have been sold as "waste and unappropriated," when in fact they were "forfeited and escheated," the purchaser, upon obtaining his deed "shall be vested with all the title of the state to such land immediately before the date of such deed, either as forfeited, escheated or waste."

This legislation is a continuation of the long-settled policy of the

parent state. "In the early settlement of this country," (Virginia,) says Mr. Justice Johnson, "the man who received a grant of land, and failed—at first in three, and afterwards in five, years—to seat and improve it, was held to have abandoned it. It received the denomination of 'lapsed land,' was declared to be forfeited, and any one might take out a grant of it." Hawkins v. Barney, 5 Pet. 457, 468. Laws forfeiting land for failure to enter it for taxation existed in Virginia until 1814, were repealed during that year, and re-established by the act of February 27, 1835. The same legislation was enacted in West Virginia almost upon the organization of the state, and has existed to the present day. These laws have, since 1835, been sustained, in frequent decisions of the courts of the two Virginias,—some of them, like that of Staats v. Board, 10 Grat. 400, elaborately considered; and they have become, if legislation and long enforcement can make them such, the law of the land.

The method of enforcing collection of taxes by forfeiture for failure to enter for taxation is somewhat unusual, and it may aid us in interpreting this legislation to glance at the reasons for it:

The original grant of 100,000 acres set up in the bill bears the date of 1796. That date directs us to a period of extensive land speculation, originating in the settlement of what was then "the west," that ensued upon the adoption of the federal Union. The legislation of the day favored such speculation. "The public land policy of the United States, at this period, was founded upon an untenable idea, which congress afterwards abandoned, namely, that of deriving an immediate revenue from the sale of large tracts, and trusting the whole plan of colonization to mercenary purchasers or proprietaries." Shouler, Hist. U. S. 1, 198. "Five millions of acres extending along the Ohio from the Muskingum to the Scioto were sold to the so-called 'Ohio Company.' One Symmes, of New Jersey, bought two millions of acres between the Great and Little Miami, which included the present site of Cincinnati." Id. In 1795 the Georgia legislature sold its right in over 20,000,000 of acres of Indian land to four companies for half a million dollars. This was the "Yazoo Act," so famous in the early history of the United States. The recent case of Halsted v. Buster, 140 U. S. 273, 11 Sup. Ct. 782, cited in defendant's brief, originated out of two Virginia patents of 1795 and 1796. The latter one issued to one Martin, and called for 85,600 acres, including within its outside boundaries a smaller tract granted the previous year to Albert Gallatin, a citizen of Pennsylvania, afterwards secretary of the treasury. The case of Hawkins v. Barney, supra, also cited on the argument of this suit, was ejectment for a 50,000-acre tract, of about the same date, lying in what was once the territory of Virginia, now a part of Kentucky. All North Carolina lawyers are familiar with the John Gray Blount patents, issued at about the same period, and covering immense tracts of land from the Sounds to the French Broad river. The North Carolina Reports are full of cases of litigation growing out of these grants. The case now being considered is a good epitome of the ordinary history of such grants. One hundred thousand acres of land were patented by one McCleary in 1796; the real party,

however, being James Swan, to whom McCleary conveyed the day after his purchase. The land, with other tracts in Virginia and Kentucky, nearly 2,000,000 of acres in all, was made the basis of a colonization society; and after various negotiations, loans, and expenditures, these tracts were sold for nearly a million dollars, the greater part of which, however, was never paid. It is needless to go into the litigation which has since ensued, which has occupied a large part of one century, and bids fair to be continued in another. In the mean while the land was not colonized, or settled in any way other than by colonization, and no taxes were paid on it. In 1838, more than 40 years after the original patent, the tract, being forfeited to Virginia under tax laws, was, by an act of its legislature, tantamount to a grant, conveyed to trustees, discharged from all taxes prior to January 1st of that year, for the purpose of enabling the trustees to pay the indebtedness of James Swan,—chiefly, it is said, in the act, due to French officers, who were in the American service during the Revolution, or their descendants. Since 1838, during a period of 56 years, no taxes have been paid, excepting, perhaps, between 1840 and 1856; and the land is again forfeited, and has been sold for nonentry for taxation. And now the present claimant, who asks to have the deeds given to the purchaser set aside, that he may be in condition to redeem, states, in his counsel's brief, the present condition of his title. As a ground for equitable relief, he says that his remedy at law would be defective, because he would have to redeem the whole tract, "and it is plastered over with adverse claims, many good and many bad;" and, as he alleges, after having redeemed, he might fail to recover, his land.

These patents of large tracts of land, imperfectly surveyed, usually including within their boundaries, but excluding in their words of conveyance, undescribed tracts of land previously granted, covering tens and hundreds of thousands of acres of land, existed in Virginia, as in many other states. They were fruitful sources of litigation. They prevented settlements by bona fide purchasers of land, encouraged the existence of squatters, and withheld land from cultivation. It is not good policy for any government to encourage the withdrawal of land from cultivation for speculative purposes. The only remedy, when it is so withdrawn, is to subject it to the ordinary taxation that rests upon other real property. That will, in ordinary cases, render the holding of it unprofitable; and it will either be divided up and sold, or surrendered to the state, through the operation of the machinery of taxing laws. It will, in the latter case, remain in the hands of the state—the only holder properly exempt from taxation—until it is required for private use. But it is difficult to reach tracts of land, held as these large patents are, by the ordinary processes of tax laws. Resident owners of land, as a rule, pay their taxes, if not when due, then within the time allowed for redemption. When such taxes are not paid, it is usually not difficult to sell the defaulting owner's land to persons who are willing to pay the amount of the tax. These facts do not obtain in the case of nonresident owners of large tracts of unimproved land.

When the state bids in the land, it obtains a tax title, and it is matter of common knowledge that, owing to irregularities of one kind and another, tax titles are seldom perfect. But the main difficulty in these cases appears to be that these tracts do not appear upon the tax lists at all. Laws like those of the Virginias strike at the root of both of these difficulties. They forfeit the land upon the failure of its owner to have himself charged on the proper books for taxation, and they vest title immediately in the state; thereby avoiding all questions of validity of title, which might otherwise arise upon possible irregularities in assessment, or on proceedings previous to or at the sale.

If such legislation can be sustained, it is more effectual than are the more common modes of collecting real estate taxes. But it is contended that such laws are unconstitutional, in this: that they conflict with the fifth and fourteenth amendments of the constitution of the United States, by depriving persons of their property without "due process of law." Plaintiff's contention is that he is entitled to require some legal proceeding, upon due notice, and something analogous to a judgment, before his title to land can be divested, and that, this manner of proceeding not having been adopted, he has the right to have the deeds given to defendant set aside, as embarrassing his right to redeem, which he claims is still in existence. We know of no reason why a forfeiture of title to land for sufficient cause, by statute or constitutional legislation, is not by "due process of law." It certainly is not that arbitrary exercise of the powers of government which Magna Charta intended to prevent, when it declared that no person should be deprived of life, liberty, or property except by the judgment of his peers or the law of the land. The contention that the constitutional provisions re-enacting those of the great charter require something in the nature of process and judicial proceeding before divesting title seems inconsistent with accustomed methods of enforcing revenue laws, which are themselves as old as Magna Charta. The objection appears to be, not to the right of a state to provide by legislation that a certain act or omission shall work a forfeiture or incur a penalty. All penal legislation does that. It is to declaring the forfeiture complete by the act, without any subsequent legal procedure. But if the act, in every case of its commission, involves the forfeiture, nothing remains but to ascertain the fact of its commission, and that can as well be done in a subsequent suit involving the title as by a proceeding brought by the state to enforce the forfeiture. The question is not a new one, and there have been conflicting opinions upon it. Against the constitutionality are cited: Kinney v. Beverley, 2 Hen. & M. 318; Barbour v. Nelson, 1 Litt. (Ky.) 60; Robinson v. Huff, 3 Litt. (Ky.) 38; Water Power Co. v. Greely, 11 Minn. 321, (Gill. 225;) Hill v. Lund, 13 Minn. 451, (Gil. 419;) Griffin v. Mixon, 38 Miss. 424. In favor of it: Levasser v. Washburn, 11 Grat. 572, which cites the earlier Virginia decisions; Usher v. Pride, 15 Grat. 190; Smith v. Tharp, 17 W. Va. 221. See, in Maine, Hodgdon v. Wight, 36 Me. 326; Adams v. Larrabee, 46 Me. 516; Cooley, Tax'n, (1st Ed.) 316.

We do not, however, find it necessary to pass upon the question of constitutionality. The present case can be decided upon other grounds. If the forfeiture provided by the constitution of West Virginia is unconstitutional, then it is a nullity, plaintiff's title has not been divested, defendant's deeds are void, and plaintiff has a complete and adequate remedy at law. Nor can he sustain · this action, in such case, as one to remove a cloud on his title. He does not aver that he is in possession of the locus. On the contrary, he asks the court to put him in possession of the land. 2 Story, Eq. Jur. § 700, note a; 3 Pom. Eq. Jur. § 1396; Frost v. Spitley, 121 U. S. 552, 7 Sup. Ct. 1129.

It remains to consider what, if any, are complainant's rights in the grant, under the constitutional provision and statutes already cited. It is claimed by complainant that they give him an absolute right to redeem. The contention of defendant is that the grant is forfeited by complainant's failure to enter it for taxation; that the state had, before selling a part of it, an indefeasible title in the whole, which it might sell in any manner it pleased; and that he became possessed, by the sale, of full title to the tracts conveyed to him by the commissioner of school lands. He contends that the redemption provided for in the act of 1884 and in earlier acts was a gratuity,—a mere matter of favor, allowed as matter of grace, but not enforceable by any legal proceedings; and this is the view of the question held by the supreme court of West Virginia.

Complainant admits in his bill that he has been guilty of the negligence which brings him within the words of the constitution. He has, "for five successive years after the year 1869," failed to have his land in Logan county "entered upon the land books of that county, and charged against him with the taxes thereon." And the constitution says that in case of such failure the land is forfeited, by operation of law, and the title thereto vests in the state. By subsequent legislation, provision is made for a redemption of the land, if application is properly made by the owner before sale, and for a payment to him of any surplus, if application is made in due season, after the sale. Without this legislation, the state's title—the legislation being constitutional—would have been absolute. Let us see what is given by the subsequent enactment: (1) If the land has been sold, the former owner may, within a given time, file a petition to recover the excess of purchase money realized by the sale. Act Feb. 21, 1887, supra. (2) At any time during the pendency of proceedings for a sale, he may intervene by petition, and pay all costs, taxes, and interest due, and thereby redeem his title. Id., supra.

It must be held in mind that without this legislation, and under the constitution, complainant has no rights whatever in the forfeited land. The act of 1887, and the previous ones of like effect, allow a redemption only by a certain mode of proceeding, viz. by filing a "petition in the circuit court," and only within a certain limit of time, viz. "during the pendency of proceedings" for the sale of the land. But there can be no question, on this bill, in

regard to the duties of the circuit court, and there never have existed any proceedings for the sale of the land. It is clear that complainant does not bring himself within the statute, if we confine ourselves to what it says. But it is contended that it means more than it says, and that, by the equity of the act, an absolute right of redemption is given, which this court can assist in enforcing. Statutes are sometimes interpreted in this way. But the liberty once practiced by English courts, of modifying statutes by what is called their equitable construction, has been much modified by the modern cases. "Equity," says Lord Coke in an often-quoted sentence, "is a construction made by the judges, that cases out of the letter of the statute, yet being within the same mischief or cause of the making of the same, shall be within the same remedy that the statute provideth." "The modern doctrine is that to construe a statute liberally, or according to its equity, is nothing more than to give effect to it according to the intention of the lawmaker, as indicated by its terms and purposes." Suth. St. Const. § 415, p. 531. We are asked to construe an act giving the privilege of redeeming land during the pendency of a certain proceeding as an act giving an absolute right of redemption until such proceedings shall have been had.

It is said by Bailey, J., to be "a dangerous rule of construction to introduce words not expressed, because they may be supposed to be within the mischief contemplated." Guthrie v. Fisk, 3 Barn. & C. 183; Suth. St. Const. § 414. Such a construction of the act would nullify what is, in my judgment, the purpose of the Virginia system of forfeiture under the revenue laws. It would in effect change it to the ordinary one of sale for taxes, and open the door to the ordinary defenses of actions on land titles. The statute gives the right, by its terms, of redemption only after the state has commenced proceedings for sale of the forfeited land. But there is nothing in it setting a time within which the state must sell, or requiring it to sell at all. If the state desires to hold the land permanently as a state reservation, or park, or for public institutions, nothing in her legislation prevents it. It is only if sale is attempted that a right to redeem is given; and the state cannot be forced to sell.

But it is said that the school commissioner has no right to sell forfeited as waste land; that the form of the two proceedings is materially different; and that complainant, being injured, has a right to be relieved from the consequences of such a sale. But, if the land belonged to the state, it is the state, not the complainant, who has a right which has been violated. It may be that the commissioner acted illegally in selling forfeited land as waste land, and that his action may be open to correction, yet it may not follow that it can be corrected in this action. While the commissioner has not the right to substitute one set of proceedings for another, only one of two alternatives results from his action: The sale is void on the ground that his petition has not given jurisdiction to the state court, in which case complainant has a complete legal remedy, or it is only irregular, in which case he has, if it is not lost by laches,

a remedy in the state circuit court where the proceedings were had. In either event, he is not entitled to relief in equity in the federal courts. The legislation which we have discussed has been passed upon by the supreme court of West Virginia. In McClure v. Maitland, 24 W. Va. 576–578, Snyder, J., holds that after the statutory forfeiture the former owner has no interest whatever in the land, but that the land is absolutely forfeited and vested in the state, and that the interest given by the statute to the former owner is a mere matter of grace on the part of the state. This is the determination of the highest court of West Virginia upon a question which is both a construction of state statutes, and of its law of real estate, and is controlling in the courts of the United States.

The conclusion we have reached is not a hardship, in this case. The learned circuit judge dismissed the bill because of laches. Although we do not rest our determination solely on that ground, yet, leaving out of view all that has been said with regard to any other negligence on complainant's part and on that of the predecessors in whose shoes he stands, there has been such default in the matter of taxes as would indispose a court of equity to exercise any merely discretionary power for his benefit. At the date of the organization of West Virginia [June 20, 1863], the estate which complainant is administering claimed the ownership of more than 150 square miles in said state. For upwards of 30 years since then, as is admitted by the bill, it has borne no share of the public burdens, paid no taxes, and not even reported its land for taxation. Complainant does not now, in his bill for relief, aver any tender of the taxes due to the state, or that he is ready and willing to pay them, or even that he has any intention of paying them. The land—a part of it—has been sold by an officer of the state without authority of law, as complainant claims; irregularly, as defendant admits. The court is asked to set aside the deeds given in pursuance of the sale, so as to allow an opportunity to him to exercise his right to redeem, if he shall, after they have been set aside, think fit to do so. What he claims is an absolute right to redeem, and he asks that this court shall set aside these deeds because they embarrass him in the exercise of that right. Courts of equity will, as far as is within their jurisdiction, interfere to prevent an unnecessarily harsh enforcement of forfeitures. No man ought to lose his estate because of failure to meet his engagements or perform his duties by some exact day which has been prescribed by statute; and to that extent the law favors provisions for redemptions from forfeitures of mortgages or from judicial sales, and this principle applies to laws providing for redemption from tax sales. Cooley, Tax'n, 363. But this case is not one of failure to pay by an exact day, or even of ordinary negligence. It is rather that of an attempt to evade all obligations for taxes to the state. The forfeiture results from neglect and refusal to comply with a law essential to the existence of a state, continued through a long series of years.

We have not considered it necessary to discuss several questions

presented by counsel. What has already been said seems sufficient. The conclusion reached is that complainant was not entitled to the relief prayed for in his bill, and that the demurrer was properly sustained. The decree of the circuit court will be affirmed.