KING *v.* STATE OF WEST VIRGINIA AND SPRUCE COAL AND LUMBER COMPANY.

SAME *v.* SAME AND MILLS.

SAME *v.* SAME AND BUSKIRK.

ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF WEST VIRGINIA.

Nos. 445, 446, 447. Argued December 14, 15, 16, 1909.—Decided January 31, 1910.

When this court has determined the constitutionality of a state statute that question is not open, and cannot be made the basis of jurisdiction for a writ of error; and so held as to the statute of West Virginia involved in this case and sustained as constitutional in *King* v. *Mullins*, 171 U. S. 404.

On writ of error this court cannot deal with facts, and whether the land involved is within or without certain boundaries is for the state court to determine.

The construction and effect of, and rights acquired by, a decree of the state court are matters of state procedure. Nothing in the Federal Constitution prevents a state court from modifying a decree while the case remains in the court; nor is a beneficiary of a decree deprived of his property without due process of law, within the meaning of the Fourteenth Amendment, by the subsequent action of the court modifying or reversing the decree while the case is still pending therein.

The decision of the state court that the only portion of a statute which is unconstitutional is separable and inapplicable to the case is final.

Writs of error to review 64 W. Va. 545, 546, 584, 610, dismissed.

THE facts are stated in the opinion.

*Mr. Hannis Taylor* and *Mr. Maynard F. Stiles,* with whom *Mr. John G. Carlisle* was on the brief, for plaintiff in error.

*Mr. William G. Conley,* Attorney General of the State of

West Virginia, for defendant in error, State of West Virginia, submitted.

*Mr. John F. Dillon* and *Mr. C. W. Campbell*, with whom *Mr. Harry Hubbard, Mr. Edward C. Lyon, Mr. Malcolm Jackson* and *Mr. John A. Sheppard* were on the brief, for defendants in error, Mills and others.

*Mr. Frank Cox*, with whom *Mr. James F. Brown* and *Mr. William R. Lilly* were on the brief for defendants in error, Buskirk and others.

Mr. Justice Holmes delivered the opinion of the court.

These writs of error are taken in a suit by the State of West Virginia brought in May, 1894, for the sale of so much of a tract of 500,000 acres of land granted to Robert Morris in 1795 as is within the State and liable to be sold for the benefit of the school fund. See *State* v. *King*, 64 W. Va. 545; *Ib.* 546, 584; *Ib.* 610. The constitution of the State provides as follows: "It shall be the duty of every owner of land to have it entered on the land books of the county in which it, or a part of it, is situated, and to cause himself to be charged with the taxes thereon, and pay the same. When for any five successive years after the year 1869, the owner of any tract of land containing one thousand acres or more, shall not have been charged on such books with State tax on said land, then by operation hereof, the land shall be forfeited and the title thereto vest in the State." Art. XIII, § 6 (W. Va. Code, 1906, p. lxxxv). By chap. 105 of the Code of the State, as amended by the act of February 23, 1893, c. 24 (W. Va. Acts, 1893, p. 57), a suit like the present is to be brought by the State for the sale of land so forfeited, and the former owner is to receive the surplus proceeds if he files a petition and proves title, or, if he prefers, may redeem. Further details are stated in *King* v. *Mullins*, 171 U. S. 404, where the validity of the system

created by the constitution and statute referred to was considered and maintained in a suit concerning this same tract. See also *King* v. *Panther Lumber Co.*, 171 U. S. 437. *Swann* v. *West Virginia*, 188 U. S. 739.

These provisions being in the interest of actual settlement in the country, the Constitution also provides that all titles of the State to forfeited lands, &c., not redeemed or redeemable, shall be vested in any person, other than the one in default, his heirs or devisees, for so much thereof as he shall have held for ten years under color of title, having paid taxes on the same for any five of the ten years, with ulterior provisions if there be no such person. The statute further provides for bringing in parties interested and enacts that land already sold under the statute, on which taxes since have been regularly paid, or land transferred by the Constitution, shall be dismissed from the suit, and thus exempts it both from sale in that suit and from the redemption incident to the proceedings for a sale. Section 6. The redemption allowed is only from the title still remaining in the State and does not affect titles under previous sales or the Constitution; the petitioner acquires no other title than that which was vested in him immediately before forfeiture. Section 17. By § 20 the bar of the final decree is limited in accord with these provisions of § 17.

After the bill in this case had been filed and several times amended, the plaintiff in error, King, answered, in June, 1896, setting up title to the 500,000 acres, charging that the statute which attempts to work out a forfeiture of land, &c., is contrary to the Fourteenth Amendment of the Constitution, but asking, "if it would be adjudged that said tract of land is forfeited to the State of West Virginia by reason of the non-assessment thereof," &c., that a decree be made allowing him to redeem.. The answer also set out a very long list of claims to parcels of the tract, and charged that the persons making them should be made parties defendant to the bill. There were parties intervening at this stage, but they do not seem to need notice. The case was sent to a commissioner, who found,

among other things, that about 10,000 acres of the land was not subject to junior claims, and that the taxes and interest were $2,195.65. On this report coming in King paid $3,090.08 for taxes and costs, and thereupon, on September 30, 1897, a decree was entered declaring that King "has the right superior to all others to redeem said land so far as the record in this case shows," and that the portion of the land lying in West Virginia, "so far as the title thereto is in said State," which portion is adjudged to be bounded as set forth in the decree, "is hereby, by the said Henry C. King, fully redeemed; and all forfeitures of said land and taxes and interest heretofore charged or chargeable thereon are hereby released and discharged." "But it is provided that this redemption shall not affect the rights of any person not party to this suit may have, if any, under the provisions of section 3, Article 13, of the constitution of the State of West Virginia, such rights and claims not being in any manner adjudged or determined hereby." In fact, whatever it said, the decree could not grant a redemption affecting anybody's right but that of the State. The right of purchasers at court sales and transferees under the Constitution are protected by § 17 of the act of 1893, as pointed out by the Supreme Court of Appeals. 64 W. Va. 590, 599.

The State appealed in October, 1898, to the Supreme Court of Appeals, and on February 7, 1900, the decree "in so far as it allows the appellee, Henry C. King, to redeem the land described in this decree by reason of the payment of the sum of $3,090.08, costs, taxes and interest as fixed by the Circuit Court, and in so far as it ascertains such costs, taxes and interest," was reversed and in all other respects affirmed. The cause was ordered to be remanded with directions to permit King to amend his petition so as to carefully describe and accurately locate the portion of said land he desired to redeem. *State* v. *King*, 47 W. Va. 437. A little later in the same year (1900); the State submitted a fifth amended bill, making the persons mentioned in King's answer as having interest in the

tract parties, and asked the directions of the court, King now, contrary to his answer above stated, protesting, on the ground of the above-mentioned decree. The bill was ordered to be filed and in March, 1901, King filed an amended answer and petition, stating that he had not been able in the time allowed to define all the land, but that he did there give a careful description of certain portions upon which he desired to pay such future sum as was properly chargeable thereon. Schedules were set forth and the prayer was to be permitted to pay the sum properly chargeable upon the land above described and to be described in a supplemental petition.

In many instances the land claimed by the newly joined parties was dismissed without controversy from the suit as subject neither to sale nor to redemption under the Constitution and laws. In others the land claimed was within the boundaries established by the above-mentioned decree of September 30, 1897, but was alleged to be outside the true lines of the Morris grant, the correctness of the decree being denied. And again claims inconsistent with King's right to redeem, that were not admitted by him, were set up on the footing of purchases from the State. On July 5, 1901, the case was referred to a commissioner to report, among other things, the quantity, description and location of the portions of the Morris grant and other land concerned, to which the title then remained in the State and which was subject to sale. On July 14 King answered the answers of some of the new parties claiming portions of the land. In September he applied for a prohibition against the proceeding in the county court, which was denied on the ground that the court had jurisdiction, and that if it made a mistake it would be only error to be corrected in the usual way. *King* v. *Doolittle*, 51 W. Va. 91. The commissioner proceeded to take evidence, King being represented at the hearing, and this lasted until April 6, 1903, when the report was filed. On December 6, 1905, the court made a decree establishing very different boundaries from those fixed by the decree of September 30, 1897, and cutting down the Morris

grant to about 97,000, or, as the plaintiff in error says 90,000, acres. Meantime the State made a sixth, seventh and eighth amendment to its bill, bringing in new defendants, but these seem to need no further mention.

Motions had been made by Egbert Mills to dismiss a tract of 112 acres from the suit, and by the Spruce Coal and Lumber Company to dismiss a tract of 7,000 acres, and by others, on the ground that, as has been stated, by the statute under which the suit was instituted, whenever it should appear to the court that any part of the land in question had been sold by the State in former similar proceedings, &c., or was held under § 3 of Art. 13 of the state constitution, the bill should be dismissed as to such part.

On February 23, 1905, the act of 1893 was amended so as to allow defendant claimants to file deeds or certified copies of deeds made under an order of court in previous proceedings for the sale of school land, or patents from Virginia or West Virginia, purporting to convey any part of the land in suit; and it was enacted that if the State or some other claimant did not, within thirty days, allege and prove by a proper certificate that such part again had become forfeited since the date of the conveyance, the court should have no jurisdiction to sell such part or to permit redemption of it, but should enter an order dismissing the suit as to such part. (It was left an open question in *State* v. *King,* 64 W. Va. 594, whether this did not enlarge King's rights, in case of a second forfeiture.) It was enacted also that if it should appear that any part of the land had been held for ten years under color or claim of title and that taxes had been paid for five of the ten years, or if it should appear that the land had been held under color of title and taxes paid for five years since 1865, the suit should be dismissed as to such part. The court further was authorized to dismiss the suit in whole or in part if satisfied by report of the commissioner of school lands and inquiry that the whole or part of the lands was not liable to sale. Previous sales of school lands were validated so far as to pass the title of the State. After

this amendment new motions were filed on June 1, 1905, and subsequently, with copies of patents and deeds, if not previously filed. King objected on the ground that if § 3 of Art. 13 of the constitution was construed to apply to land forfeited after the constitution was adopted it was contrary to the Constitution of the United States, and that § 6 of chap. 105 was also, if construed not to permit King to redeem all the land described in his petition. Time was allowed until the first day of the next October term for the State or any other claimant to show any defences to these motions, and no defence appearing, on December 7, 1905, the day after the new boundary decree, and on later days, the motions were granted and the suit dismissed as to the tracts of land concerned.

The dismissals were on two grounds; that the tracts concerned were outside the Morris grant as bounded by the new decree; and that they were held under grants from the State, &c., and therefore were within c. 105, § 6, of the Code as amended and Art. 13, § 3, of the constitution. On December 3, 1907, King appealed to the Supreme Court of Appeals, but on December 22, 1908, the decrees were affirmed. It was held that the above-mentioned tracts claimed by Egbert Mills (No. 446 in this court) and the Spruce Coal and Lumber Company (No. 445 in this court), were outside the Morris grant. State v. King, 64 W. Va. 545. The new boundary was upheld in State v. King, 64 W. Va. 546. In that case it was decided that the defendants made parties after the first boundary decree of September 30, 1897, were not bound by it as partially affirmed, even if they had instigated and contributed to the appeal. Pages 559 et seq. See Rumford Chemical Works v. Hygienic Chemical Company, 215 U. S. 156. Finally in State v. King, 64 W. Va. 610, the court sustained a dismissal of land claimed by Buskirk (No. 447 in this court) on the ground that it had been sold as school land pending the present proceedings and so the right to redeem was gone, and moreover the sale was validated by the amendment of 1905 to the act of 1893, as above set forth. In 64 W. Va. at 584 is a separate opinion

discussing the amendment of 1905, and deciding that it merely made legitimate rules of evidence and changed no rights.

To complete the history of the case, even if not material, it may be added that petitions for rehearing were presented and disallowed, but that on January 21, 1909, it was decreed that the boundary decree of December 6, 1905, should be "so modified and limited in effect as not to affect or impair any right vested in any person by the decree entered herein by the Circuit Court of Wyoming County on the 30th day of September, 1897, as modified and partially affirmed by a decree entered by this court on the 7th day of February, 1900, and to the like extent the decree made and entered herein on the 22nd day of December, 1908, by this court, in so far as the same affirms said decree of December 6th, 1905, is hereby so modified and limited." The decrees as to the defendants in error were not modified, but still stand. Perhaps the meaning of this last decree is as contended for by some of the defendants in error, that as between the State and King on one side and the defendants brought in after September 30, 1897, on the other, the new boundaries shall prevail, but that as between those who were parties before September 30, 1897, the old boundaries still are to be taken as correct, so that if within the latter bounds there is land to which the State alone has title, King still may redeem. The court has indicated a tendency to believe that the old decree still bound the State, *King* v. *Mason,* 60 W. Va. 607, while it clearly holds that it does not bind parties afterwards introduced. *State* v. *King,* 64 W. Va. 546, 561. At all events, we are of opinion that this modification does not affect the cases before this court.

The present writs of error are for the purpose of reversing the decrees as to boundary and dismissal that have been mentioned. The defendants in error move to dismiss, and we are of opinion that the motion should be granted. The only serious question in the case, if we assume that King saved it, is whether the West Virginia constitution and statute are consistent with the Fourteenth Amendment. But that question

was answered in *King* v. *Mullins,* 171 U. S. 404. The construction of the state constitution by the state court as not confined in its operation to title vested and remaining in the State when the constitution went into effect (which of course is final), is the only natural construction and was to be expected; then, as now, it was obvious that the right to redeem under the statute would not exist in case part of the land had been sold to a junior purchaser, so that in that case there would not be a 'revestiture commensurate with the divestiture,' as it is argued that there should be; and to say the least, it is not surprising that it is held that the right may be lost by transfer pending the proceedings. The whole discussion upon this point is little more than an attempt in respectful form to reargue by unreal distinctions what was decided in the former case. The question is not open and we shall discuss it no more. It hardly is necessary to add that on a writ of error we do not deal with the facts, *Behn* v. *Campbell,* 205 U. S. 403, 407, and therefore the decision that most of the tracts in question are not within the boundaries of the Morris grant disposes of King's rights here.

But an attempt is made to maintain that King got vested rights under the first boundary decree, September 30, 1897, and his payment of the sum fixed in that decree, coupled with the partial affirmance of the same. But the construction and effect of that decree, how far it bound the State and whether or not it bound parties subsequently coming in, were matters of state procedure alone. The cases remained within the jurisdiction of the state court, and if, by local practice, the lower or higher court had power to change an earlier decree in the cause by direct order or indirectly by construction, which latter we by no means intimate was done, it is a matter that cannot be complained of here. See *Patterson* v. *Colorado,* 205 U. S. 454, 460. It is said that the decree established the law of the case, but that phrase expresses only the practice of courts generally to refuse to reopen what has been decided, not a limit to their power. *Remington* v. *Central Pacific R. R. Co.,*

198 U. S. 95, 99, 100. See *Great Western Telegraph Co.* v. *Burnham,* 162 U. S. 339, 343. In some States it is true that a stricter rule is applied, *Northern Pacific R. R. Co.* v. *Ellis,* 144 U. S. 458, but there is nothing in the Constitution of the United States to require it, or to prevent a State from allowing past action to be modified while a case remains in court. See *San Francisco* v. *Itsell,* 133 U. S. 65. The highest court of the State is the final judge of the powers conferred by the state laws in that regard. It was said by the Supreme Court of Appeals in this case that "the decree adds nothing to King's right." 64 W. Va. 599.

In view of what we have said, it hardly is necessary to consider the amendment of the Code, c. 105 and the act of 1893 by the act of 1905. It is argued that the state court misconstrued the statute, but we have nothing to do with that. Judge Brannon clearly shows, 64 W. Va. 584, 591 *et seq.,* that the amendment does not even change the burden of proof as to the validity or invalidity of other sales or conveyances set up. *Ib.* 594. The limitation of thirty days to overcome the effect of filing a deed or patent from the State is thought to be merely directory, and it is pointed out that in fact King was allowed five months, and that he did nothing. The limitation is held to be reasonable, and even if void to be separable from the rest of the act, another point on which the State's decision is final. Giving *prima facie* effect to the document cannot be questioned seriously. *Marx* v. *Hanthorn,* 148 U. S. 172. The other provisions of the act are shown to take no right from King that he had under the previous law, and are held to be consistent with the state constitution. In our opinion there was no question raised in these cases that properly could be brought before this court for review.

*Writs of error dismissed.*