### SHEFFEY et al. v. DAVIS COLLIERY CO. et al.

(District Court, N. D. West Virginia. April 25, 1913.)

1. TAXATION (§ 852\*)—ENTRY OF LAND—DUTY TO OWNER—EFFECT OF FAILURE—FORFEITURE—VOID SALE.

Under Const. W. Va. art. 13, § 6,† making it the duty of every landowner to have his land entered on the land books of the county and pay taxes thereon, and providing that a failure to have the same so entered and to pay taxes for five successive years shall forfeit the land to the state, such failure works an absolute forfeiture of all the owner's right, title, and interest in and to the land, so that he has no standing to maintain an action to recover the same from a purchaser at a void judicial sale, who has had the land entered in his own name and paid the taxes.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1668, 1669; Dec. Dig. § 852.\*]

2. TAXATION (§ 848\*)—LAND—DUTY TO ENTER—NONRESIDENTS.

The fact that land in West Virginia is owned by nonresident heirs does not excuse them for failing to see that the land is entered for taxes on the land books of the county in which it is located and the taxes paid by them thereon, under Const. W. Va. art. 13, § 6, providing that an owner's failure to so enter land and pay the taxes for five successive years shall constitute an absolute forfeiture thereof to the state.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1664; Dec. Dig. § 848.\*]

3. TAXATION (§ 852\*)—FORFEITURE OF LAND—VOID SALE—RIGHT TO SUE—LACHES.

Proceedings having been instituted in 1892 for the sale of a tract of more than 1,000 acres in West Virginia, which belonged to the heirs of a nonresident owner, to sell the same, the land was duly sold and the sale confirmed, after which the purchaser entered the land for taxes in his name and paid taxes thereon continuously thereafter. Const. W.

---

Va. art. 13, § 6, provides that, where the owner of a tract consisting of more than 1,000 acres for five successive years fails to enter his land for taxes in the county where it is located and to pay taxes thereon, he shall forfeit the land to the state. *Held*, that the heirs, having failed to enter the land for taxes in their own name subsequent to the judicial sale and having paid no taxes thereon, were barred by laches to recover the land from the purchaser by suit in equity instituted in October, 1910, to cancel such sale for invalidity.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1668, 1669; Dec. Dig. § 852.*]

In Equity. Suit by Maggie Sheffey and others against the Davis Colliery Company and others. Judgment for defendants.

Davis & Davis, E. B. Templeman, and D. E. Swartz, all of Clarksburg, W. Va., and H. G. Kump, of Elkins, W. Va., for plaintiffs.

W. B. & E. L. Maxwell and E. A. Bowers, all of Elkins, W. Va., for defendants.

DAYTON, District Judge. Hugh W. Sheffey, resident of the state of Virginia, died intestate in 1889, seized of a tract of near 5,000 acres of unimproved land in Randolph county, this state. His law partner, James Bumgardner, Jr., qualified in Virginia as his administrator. His brothers, sisters, and children of his deceased brothers and sisters constituted his heirs at law. In June, 1892, Bumgardner, his administrator, and Maggie Sheffey, daughter of one of his heirs, purporting to represent the other heirs, entered into a contract with O. C. Womelsdorf to sell to him this tract of land at the price of $3 per acre, and, as some of the heirs were infants, to secure a ratification and confirmation of such sale in proper judicial proceedings to be instituted in the circuit court of Randolph county. Such proceedings were instituted in the name of Andrew J. Long, administrator, then sheriff of the county, to whom the estate was committed, and said sale was made, ratified, and confirmed by decrees entered therein, and the land conveyed to Womelsdorf by a commissioner of the court, appointed for the purpose. This suit was, in October, 1910, instituted by the heirs of Sheffey, to set aside, cancel, and annul the decrees, and the deeds of Womelsdorf and his subsequent grantees, as constituting cloud upon plaintiffs' title. The legal proceeding is assailed as void for want of jurisdiction in the court and other reasons. By answer these charges are denied, and forfeiture of title and laches are claimed in defense.

At the threshold of this case we are confronted with the question whether these plaintiffs have any title to the land, cloud upon which, by this bill, they are seeking to remove. It is undisputed that for more than 15 years the land in their names has been off the land books and they have paid no taxes thereon, while, on the other hand, ever since Womelsdorf's purchase under the judicial proceedings in Long, Adm'r, v. Bumgardner et al., here assailed as void, the land has been assessed to and taxes paid by him and his subsequent grantees. The Supreme Court of Appeals of West Virginia, in a number of cases (Grinnan v. Edwards, 21 W. Va. 347; Haymond v. Camden,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

22 W. Va. 180; Sturm v. Fleming, 22 W. Va. 404; Stephens v. Brown, 24 W. Va. 234; Lynch v. Andrews, 25 W. Va. 751; Hall v. Hall, 27 W. Va. 468), has held, where one within the Confederate lines during the Civil War had been proceeded against in the courts of this state within the Federal lines, by order of publication, and his lands sold for purchase money or other debt, such proceedings were absolutely null and void. In the last two of these cases (Lynch v. Andrews and Hall v. Hall) and in Sturm v. Fleming, 26 W. Va. 54, upon a second appeal, the court distinctly held that a purchaser under such void judicial sale did not hold adverse to the original owner, but in privity, and that taxes paid by him or his assignee inured to the benefit of the original owner, and saved his land from forfeiture in case the land in the original owner's name had been omitted from the tax books, and but for such payment by the purchaser in his name would have been forfeited. Subsequently this court, in Swann v. Thayer, 36 W. Va. 46, 14 S. E. 423, and Mullan's Adm'r v. Carper, 37 W. Va. 215, 16 S. E. 527, practically overruled these prior cases and held (in Mullan v. Carper) that:

"A court of equity, without jurisdiction of the person, pronounces a decree for the sale of a certain parcel of land, and appoints commissioners, with directions to make the sale. They sell the land. The court confirms the sale, and appoints the commissioners to convey the land to the purchaser on payment of the purchase money. The purchase money is paid, and the commissioners make to the purchaser a deed purporting to convey the land in fee. Such deed, being proved, constitutes color of title"

—and, further, that adverse holding under such color of title for the statutory period of ten years would completely bar the right of the original owner to the land. These later cases have been upheld in a number of subsequent decisions of this court. Bennett v. Pierce, 50 W. Va. 604, 40 S. E. 395; McNeely v. Oil Co., 52 W. Va. 616, 44 S. E. 508, 62 L. R. A. 562; Waldron v. Harvey, 54 W. Va. 608, 46 S. E. 603, 102 Am. St. Rep. 959. In this last case the court undertakes, however, to distinguish Hall v. Hall and Lynch v. Andrews from Mullan v. Carper, and would seem to still hold to the proposition that payment of taxes by the purchaser at the void sale would inure to the benefit of the original owner and prevent forfeiture for his nonpayment of taxes.

In Simpson v. Edmiston, 23 W. Va. 675, approved in Stockton v. Craig, 56 W. Va. 473, 49 S. E. 386, and State v. Harman, 57 W. Va. 447, 50 S. E. 828, it was held that, where a tax deed was void, the title of the former owner remained in him, and the colorable title or claim of the tax purchaser under such void deed and the former owner's title were distinct and hostile, so much so that payment of taxes on the same land by the tax purchaser in his name would not prevent the forfeiture of it for omission in the former owner's name for the same years. Under this ruling it was practically established that both the former owner and the claimant under the void deed must keep the land on the tax books in their own names and both pay taxes, or else be subject to the forfeiture of their respective title or "color and claim of title" for an omission of five successive years so to do. Finally, however, this has been all upset by the more recent

decisions of State v. King, 64 W. Va. 546, 63 S. E. 468, State v. Snyder, 64 W. Va. 659, 63 S. E. 385, and State v. West Branch Lumber Co., 64 W. Va. 673, 63 S. E. 372, where it is held (King Case):

"The privilege given by statute to redeem forfeited land is the mere grace of the state, not its duty, and does not constitute a vested property right in the former owner."

And:

"The transfer to other claimants of land made by section 3, article 13, of the Constitution, and also a conveyance under a sale in a suit to sell land as forfeited, constitute grants of the state, and create new and original title."

And further (Snyder Case):

"1. The state is estopped by section 29 of chapter 31 of the Code from proceeding to sell, as forfeited for nonentry in the name of the former owner, land conveyed by a sheriff to a purchaser, pursuant to a sale thereof for nonpayment of taxes thereon, though the deed, because of defects in the sale proceeding, is void as to the former owner and fails to vest his title in the grantee therein.

"2. By making such deed conclusive evidence against all persons except the former owner, his heirs and assigns, and those who might have redeemed the land within one year after the date of the sale, the statute works, by estoppel, a release, grant, or transfer of the title of the former owner to the grantee therein, upon the forfeiture of such title for failure of the former owner to keep the land taxed in his name and 'the taxes paid thereon for five successive years."

And finally (in West Branch Case):

"1. Though failure of a former owner of land, conveyed by a fatally defective tax deed, made pursuant to a sale by a sheriff for delinquency, to keep the land taxed in his own name and pay the taxes for a period of five successive years, works a forfeiture of the title, the deed is conclusive evidence against the state that the title of the former owner is in the tax deed grantee, and she cannot maintain a suit to sell the land as forfeited.

"2. Section 29, chapter 31, of the Code, by estopping the state from proceeding against the grantee in a fatally defective tax deed to enforce a forfeiture in the name of the former owner, releases or grants such forfeited title to such grantee in advance of the accrual of the forfeiture."

From all which the anomalous condition would seem to arise that, while five successive years' failure by a landowner to have his land assessed and to pay the taxes thereon forfeits his title to the state, yet the state is estopped from selling or disposing of the land so long as it is assessed in the name of, and taxes are paid by, one having "claim or color of title" to the land under a void deed. However, all the cases agree that under section 6, article 13, of the Constitution of the state (given in the margin [1]), a complete forfeiture to the state

[1] "Sec. 6. It shall be the duty of every owner of land to have it entered on the land books of the county in which it, or a part of it, is situated, and to cause himself to be charged with the taxes thereon, and pay the same. When for any five successive years after the year 1869, the owner of any tract of land containing one thousand acres or more, shall not have been charged on such books with state tax on said land, then by operation hereof, the land shall be forfeited and the title thereto vest in the state. But if, for any one or more of such five years, the owner shall have been charged with state tax on any part of the land, such part thereof shall not be forfeited for

accrues of every tract of 1,000 acres or more of land, where the owner thereof fails to have it entered upon the land books, charged with taxes, and to pay the same for any successive five years.

How complete and sweeping is this forfeiture is set forth in McClure v. Maitland, 24 W. Va. 561, where the court says that, after the forfeiture becomes complete by such failure, "the former owner has no more claim to or lien upon the land than one who never had pretended to own it"; that under sections 4 and 5 of the same article (given in the margin [2]) the state has a right to grant it to others, sell it when and how she pleases in "the exercise of this perfect dominion over her own property," and the grant to the former owner, in case she does sell, "of any surplus proceeds, is wholly gratuitous, and his claim thereto is confined to the proceeds as such."

This ruling has been approved and followed by the Circuit Court of Appeals for this circuit in Read v. Dingess, 60 Fed. 21. 8 C. C. A. 389; the court sitting at the time being Chief Justice Fuller and District Judges Seymour and Simonton. And further, in the recent case of Fay v. Crozer (C. C.) 156 Fed. 486, the facts in which are similar to those here, I reviewed the legislation in Virginia and West Virginia touching these forfeitures of lands for nonentry and nonpayment of taxes. I there held that under this section 6, article 13, of the Constitution, it is the absolute duty of one claiming to be the owner to see to it that his land is entered upon the land books for taxation and to pay the taxes assessed, even to the extent of compelling the proper officer to so enter it upon the books by legal proceeding if he refused to do so. I there called attention to the last and ruling cases of Stockton v. Craig, 56 W. Va. 464, 49 S. E. 386, and Webb v. Ritter, 60 W. Va. 193, 54 S. E. 484, overruling, in part at least, the prior cases of Sayers v. Burkhardt, 85 Fed. 246, 29 C. C. A. 137 (C. C. A. 4th

such cause. And any owner of land so forfeited, or of any interest therein at the time of the forfeiture thereof, who shall then be an infant, married woman, or insane person, may, until the expiration of three years after the removal of such disability, have the land, or such interest charged on such books, with all state and other taxes that shall be, and but for the forfeiture would be, chargeable on the land, or interest therein for the year 1863, and every year thereafter with interest at the rate of ten per centum per annum; and pay all taxes and interest thereon for all such years, and thereby redeem the land or interest therein: Provided, such right to redeem shall in no case extend beyond twenty years from the time such land was forfeited."

2 "Sec. 4. All lands in this state, waste and unappropriated, or heretofore or hereafter for any cause forfeited, or treated as forfeited, or escheated to the state of Virginia, or this state, or purchased by either and become irredeemable, not redeemed, released, transferred or otherwise disposed of, the title whereto shall remain in this state till such sale as is hereinafter mentioned be made, shall by proceedings in the circuit court of the county in which the lands, or a part thereof, are situated, be sold to the highest bidder.

"Sec. 5. The former owner of any such land, shall be entitled to receive the excess of the sum for which the land may be sold over the taxes charged and chargeable thereon, or which, if the land had not been forfeited, would have been charged or chargeable thereon, since the formation of this state, with interest at the rate of twelve per centum per annum, and the costs of the proceedings, if his claim be filed in the circuit court that decrees the sale, within two years thereafter."

Cir.) and Totten v. Nighbert, 41 W. Va. 800, 24 S. E. 627, in the first of which (Stockton v. Craig) it is distinctly held that one whose land is forfeited for nonpayment of taxes has no such interest as warrants him to maintain suit to cancel alleged fraudulent and void decrees and deeds as cloud upon title. An appeal direct to the Supreme Court was taken in this case of Fay v. Crozer, and that court approved of my decision therein and dismissed the appeal. Fay v. Crozer, 217 U. S. 455, 30 Sup. Ct. 568, 54 L. Ed. 837. That court based its action on King v. Mullins, 171 U. S. 404, 18 Sup. Ct. 925, 43 L. Ed. 214, and King v. West Virginia, 216 U. S. 92, 30 Sup. Ct. 225, 54 L. Ed. 396. Subsequently, in Kentucky Union Co. v. Kentucky, 219 U. S. 140, 31 Sup. Ct. 171, 55 L. Ed. 137, where similar laws of Kentucky were involved, Fay v. Crozer was cited and approved.

[1] It may therefore be regarded as settled in this state that the owner of land must see to the entry of his land upon the land books; that his failure to do so for five successive years works an absolute forfeiture of all his right, title, and interest therein; that notwithstanding the state may, by proceedings absolutely void, sell the land to another, who sees to it that the entries are made in his name and the taxes paid, yet this does not relieve the original owner's obligation in this regard. But, suppose a court at the suit of private parties, wholly without jurisdiction in the premises, enters void decrees of sale and confirmation, purporting to vest this owner's land in a third party, who immediately enters the land on the books in his name, claims title in himself, and pays the taxes; does this warrant the original owner in dropping the land off the books in his name, and some 15 years after, as in this case, coming into a court of equity to assail the judicial proceeding as void and a cloud upon his title, and at the same time claiming relief from the forfeiture by virtue of the purchaser in the void proceeding having paid such taxes? A case might arise where the purchaser has fraudulently secured the institution of such void proceeding, knowing it to be void, for the purpose of corruptly obtaining the owner's title, where this might be justified; but where one in good faith has purchased under decrees of a court of general jurisdiction, and in good faith takes his deed, enters the land for taxation in his own name, a publication to the world of his claim of ownership, it is certainly gross laches, if not bad faith on the part of the original owner not to inform him promptly in some way that he disputes the validity of the sale and still claims to own the land. And under such conditions it seems to me his duty is just as imperative to see that the title in his name is entered upon the books and not subject to forfeiture. He knows, or ought to know, that he runs two risks in the premises—first, that of the forfeiture to the state; and, second, the maturity of a superior title by ten years' adverse holding under the court's deed, conferring at least color of title. In such circumstances the very fact that he finds his lands assessed not to himself, but to another, should at least arouse him to prompt action, to see to it that he has the land assessed in his name, runs no risk of forfeiture, and that the purchaser's right to have it assessed to himself is challenged. There is here absolutely no evidence to indicate that Womels-

dorf bought this land under these judicial proceedings in other than good faith and wholly as a stranger to it. It is admitted that there is no evidence of fraud on his part or that of his subsequent grantees.

[2] I have carefully examined the reasons set forth by these plaintiffs for their delay in the premises. I do not think they afford justification. They knew that they were heirs of Sheffey; that under the law his real estate descended direct to them; that it was subject, upon his death, to assessment and taxation in their names as such heirs. They had to recognize the obligation, enforced by the Constitution of the state, upon them as such owners to see that such entry and assessment was made; they had no right to depend upon any one else to do this, it being a personal obligation. The fact that they were nonresidents only required them, if anything, to be more careful to see to it that their legal obligations in this particular were performed.

[3] Under the conditions existing, I am driven to the conclusion that plaintiffs' title if any they had after the judicial sale, has become absolutely forfeited for nonassessment and nonpayment of taxes, and that, if this were not so, their delay and laches in asserting and maintaining it during these many years has estopped them from doing so now. In this discussion it may be assumed that I have assented to the contention that the judicial proceedings assailed and under which the land was sold to Womelsdorf were null and void. I now here expressly disclaim such assumption; on the contrary, I have not, in view of the conclusion reached that plaintiffs have not, under any conditions, the right to relief, regarded it necessary to consider at all the questions raised as to their validity.

The plaintiffs' bill must be dismissed.