# KENTUCKY UNION COMPANY *v.* COMMON-WEALTH OF KENTUCKY.

# EASTERN KENTUCKY COAL LANDS CORPORATION *v.* SAME.

# SAME *v.* SAME.

### ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

Nos. 22, 47, 48. Argued October 28, 31, 1910.—Decided January 3, 1911.

A State may choose its own methods of taxation and form and method of enforcing payment so far as Federal power is concerned, subject only to the restrictions of the Federal Constitution.

Where the highest court of the State has held that provisions that might render an act unconstitutional are inoperative, and the elimination of those provisions do not affect the remainder of the act, this court is bound by such construction and will construe the act as though stripped of such provisions.

An *ex post facto* law and a retroactive law are different things.

Laws of a retroactive nature imposing taxes or providing remedies for their assessment and collection and not impairing vested rights are not forbidden by the Federal Constitution. *League* v. *Texas*, 184 U. S. 156.

*Ex post facto* laws prohibited by the Federal Constitution are those relating to criminal punishment and not retrospective laws of a different nature. *Calder* v. *Bull*, 3 Dall. 386; *Orr* v. *Gilman*, 183 U. S. 278.

As the Kentucky statute involved in this case, as construed by the highest court of that State, does not impose penalties or punishments of a criminal nature, it is not an *ex post facto* law within the meaning of the Federal Constitution.

Summary procedure in the assessment and collection of taxes, if not arbitrary or unequal, and which allows opportunity to be heard does not deny the property owner due process of law simply because it is summary.

A state statute requiring owners to register lands and pay taxes thereon but which only forfeits them for non-compliance therewith after judicial proceeding and opportunity to be heard, does not deny the property owner due process of law.

A time not unreasonably short for beginning actions, fixed, in view of particular conditions, by the legislature, does not deny due process of law, *Terry* v. *Anderson,* 95 U. S. 628; and a state statute of limitations as to actions between individuals cannot affect the right of the State to determine by statute a reasonable period within which property owners must register their land, provisions being made for notice and opportunity to be heard.

Where the state court has held that although a sale may be ordered of an entire tract there is opportunity, if less than the whole is to be sold, to be heard, and have an ascertainment of the parts to be sold, the property owner is not deprived of his property without due process of law.

An offer to compromise not in accord with the terms of the statute under which lands have been declared forfeited does not amount to an offer to pay the taxes properly assessed thereunder.

Whether lands are properly described in a petition for sale thereof under a statute presents no Federal question unless the ruling sustaining it is so arbitrary and baseless as to deny due process of law.

While the Virginia-Kentucky compact of 1789 protects the holders of grants under Virginia from acts by Kentucky, cutting down substantial rights, *Green* v. *Biddle,* 8 Wheat. 1, it does not render them immune from constitutional enactments of Kentucky in regard to the taxation or registration of their property. *Hawkins* v. *Barney,* 5 Pet. 457.

A State may classify subjects so long as all persons similarly situated are treated alike. *Michigan Central R. R. Co.* v. *Powers,* 201 U. S. 245.

A state taxing statute applicable to certain counties is not unconstitutional under the equal protection clause of the Fourteenth Amendment because its operation is confined to those counties. *Florida R. R. Co.* v. *Reynolds,* 183 U. S. 471.

The doctrine of innocent purchasers does not apply against the power of the State to assess and collect back taxes and provide for registration of titles in favor of one purchasing after delinquencies; such a purchaser is not deprived of his property without due process of law, because the State exercises its rights in a constitutional manner. *Citizens' National Bank* v. *Kentucky,* 217 U. S. 443.

Where one seeks to recover under a grant or deed which does not convey all the land within the boundary described, he must show that the land sought to be recovered is within the boundary and not within the exclusions.

The provisions of the Revenue and Taxation Act of Kentucky of

March 5, 1906, involved in this action, are not unconstitutional as depriving landowners affected thereby of their property without due process of law, or denying them equal protection of the law, nor do such provisions violate the provisions of the Virginia-Kentucky compact of 1789.

127 Kentucky, 667; 128 Kentucky, 610; 111 S. W. Rep. 362, affirmed.

THE facts, which involve the constitutionality of certain provisions as to taxation and registration of land of the Revenue and Taxation Act of Kentucky of March, 1906, are stated in the opinion.

*Mr. Louis. B. Wehle,* with whom *Mr. William B. Dixon* was on the brief, for plaintiff in error in No. 22.

*Mr. John G. Johnson* and *Mr. William Jackson Hendrick,* with whom *Mr. Samuel Howland Hoppin, Mr. Eugene M. Berard, Mr. James M. Hazelrigg* and *Mr. Hannis Taylor* were on the brief, for plaintiffs in error in Nos. 47 and 48.

*Mr. J. W. M. Stewart, Mr. Z. T. Vinson* and *Mr. David W. Baird,* with whom *Mr. James Breathitt,* Attorney General of the State of Kentucky, *Mr. John F. Hager, Mr. John H. Holt, Mr. J. H. Jeffries* and *Mr. Aaron Kohn* were on the brief, for defendants in error.

MR. JUSTICE DAY delivered the opinion of the court.

These are writs of error to the Court of Appeals of the State of Kentucky, and involve the constitutionality of an act of the legislature of that State, passed March 15, 1906, entitled "An Act Relating to Revenue and Taxation." Acts of 1906, pp. 88–248. Article III is brought in question in these cases. It is set forth in full in the opinion of the Court of Appeals of Kentucky in case No. 47. 127 Kentucky, 667. Its salient features are:

Section 1 of the article makes it the duty of every owner or claimant of land to pay the taxes which have been assessed, and which should have been assessed, against him, and those under whom he claims, as the owner or claimant

thereof, as of the fifteenth day of September, 1901, 1902, 1903, the first day of September, 1904, and the first day of September, 1905, and provides that if the owner or claimant, or those under whom he claims, have failed to list the land, or any part thereof, for taxation, as of said dates, or any of them, it shall be his duty to have the same assessed and listed for taxation as is provided in the act, as of each of said dates for which the assessment has been omitted, and to pay the taxes, interest and penalties thereon. It is provided that the fact that the land has been listed for taxation, or the taxes paid thereon by another claimant, shall not relieve against the duty imposed by the act; and if any such owner or claimant, or those under whom he claims, has failed to list the land for assessment and taxation, as of any three of said dates, or has failed to pay the taxes charged, or which should have been charged against him, or those under whom he claims, as the owner or claimant thereof upon said dates, for any three of the years for which said assessments were or should have been made, said owner and claimant and those under whom he claims are declared delinquent; and such failures, or either of them, shall be cause for forfeiture and transfer to the Commonwealth of his said claim and title thereto, in a proceeding to be instituted for that purpose, as required in the act. But it is provided that the cause for forfeiture shall be extinguished if the owner or claimant, his heirs, representatives or assigns, shall, within the time and in the manner provided in the article, cause the land to be assessed for taxation, and, on or before March 1, 1907, pay the taxes charged, and which should have been charged against him, or against those under whom he claims, as the owner or claimant thereof, for each and all of said five years for which he or those under whom he claims are delinquent, together with the interest and penalties provided by law in the case of the redemption of land sold for the non-payment of taxes.

Section 2 provides for the ascertainment of the amount of taxes unpaid and the assessment required by the preceding section by a proceeding in the county court where the land lies, upon the application of the owner or claimant, by a petition filed in the court on or before January 1, 1907, in which the land sought to be charged shall be described, so as to be identified, and the years for which it was listed and the years for which the taxes were not paid shall be stated; in which petition shall also be stated the grant under which petitioner claims, if he derives title from a grant, and the instrument through or the manner in which the title devolved upon him. A hearing is provided upon a day to be fixed by the applicant, not less than ten nor more than twenty days after the filing of the petition, after notice to the county attorney, who is required to attend and represent the State and county.

The county court is required to decide upon the application in a summary manner, upon such evidence as may be offered, having regard to the value of adjacent property; to ascertain the amount of unpaid taxes which the applicant and those under whom he claims should have paid for any and all of said years, whether assessments were originally made as of said dates or not. The court is required to find the proportion of the taxes due the county and State, at the rates fixed by law for such years; and to make a record of its findings and certify the same to the auditor of the State and county clerk. Should the court find that the land has been assessed against such owner or claimant, or those under whom he claims, as of any of said dates it shall accept such assessment as a basis upon which to ascertain the amount of unpaid taxes for the year such assessment shall have been made.

Provision is made for an appeal to the Circuit Court of the county; also for the payment of the taxes as ascertained, and for compensation to the officers whose services are required.

Section 3 provides the method of procedure against the owner or claimant by the Commonwealth's attorney, in case such owner or claimant fails to have the land assessed or fails to pay the taxes charged or which should have been charged against him, or those under whom he claims, and it is made the duty of the Commonwealth's attorney to institute in the Circuit Court of the county in which the land, or any part thereof lies, a proceeding in equity in the name of the Commonwealth of Kentucky as plaintiff against the said tract of land and the owners or claimants of said land as defendants, naming them if their names are known to him, and if their names are unknown to him, designating them as the unknown owners and claimants thereof; which proceeding is for the purpose of declaring the title or claim of said defendants forfeited to the Commonwealth, and for selling the same. It is provided that this suit shall be proceeded with to final judgment in all respects as other equity causes so far as applicable.

Provision is made for posting the notice and a copy of the petition at the door of the courthouse.

The petition is required to allege the facts constituting the cause of forfeiture under the provisions of the article, and there shall be filed with the petition a copy of the grant or instrument upon which the title or claim sought to be forfeited is based; and no other title, claim or possession, or continuity thereof, whether owned or claimed by the defendant or by others, is to be forfeited or in any manner affected by the proceeding. If judgment is in favor of forfeiture, it is provided that the judgment shall operate as a transfer to and vesting in the Commonwealth of the title and claim of each and all the defendants, and those under whom they claim, without execution of deed or other instrument. If the court finds the title is not subject to forfeiture under the provisions of the article, it shall so adjudge and dismiss the petition of the plaintiff.

It is provided that judgments under the article shall be

conclusive as against all defendants, including infants, lunatics and married women, and shall not be subject to certain provisions of the code of practice.

An appeal is provided to the Court of Appeals within thirty days after judgment.

In § 4 provision is made for the purchase back of the forfeited title, and upon the proper pleadings and hearings the court is authorized to ascertain and adjudge the amount of unpaid taxes charged, and that ought to have been charged, against the defendant and those under whom he claims, as the owner or claimant of said land, for the fifty years immediately preceding the filing of such counterclaim, and if the court finds and adjudges that said defendant is the owner of the title so forfeited to and vested in the Commonwealth it shall enter judgment against such defendant for a sum equal to the amount of the unpaid taxes charged, and that ought to have been charged, against said defendant, and those under whom he claims as the owner or claimant of the land, for said fifty years, together with interest at the rate of 15 per centum per annum from the time the said unpaid taxes for said several years were due, and the costs of the proceedings, including a reasonable fee to the Commonwealth's attorney. No person is to be entitled to purchase back from the Commonwealth the title so forfeited except such defendant as may, but for such forfeiture, establish in such proceeding a title thereto in himself upon which he, could maintain an action of ejectment. Upon payment of the amount of the judgment the court is required to enter a judgment retransferring to such defendant the title and claim so forfeited to and vested in the Commonwealth.

Provision is made for the sale of the said title and claim in the event that the judgment is not paid.

The fifth section provides that any owner or claimant who institutes a proceeding allowed by § 2 of the article, who does not, within the time there limited, pay the

amount ascertained as charged or chargeable against him
and those under whom he claims, as the owner or claimant
of the land, shall not be allowed to purchase back, under
the proceedings authorized by § 4 of the article.

Section 6 of the article provides that all title and claim
proceeded against under the article and forfeited to and
vested in the Commonwealth and not purchased back
by the owner or claimant thereof, as authorized in § 4,
whether such forfeiture be for past delinquencies or for
future delinquencies as authorized under § 10, is trans-
ferred to and vested in any person for so much thereof as
such person, or those under whom he claims, has had the
actual adverse possession for five years next preceding the
judgment of forfeiture, under claim or color of title, de-
rived from any source whatsoever, and who, or those under
whom he claims, shall have paid taxes thereon for the five
years in which such possession may have been or may be
held; and in those in privity with such person, his heirs,
representatives or assigns, as to the mineral or other in-
terests or rights in or appurtenant to such land.

Section 7 provides that all title and claim to land trans-
ferred to and vested in the Commonwealth, under the pro-
visions of this article, and not purchased back by the owner
or claimant, as provided by § 4, and not vested in the oc-
cupant, as provided in § 6, shall be sold to the highest and
best bidder for cash in hand, which sale shall be made
pursuant to a judgment of the Circuit Court in said action,
and shall be at public auction at the door front of the
courthouse upon the first day of some regular term of the
Circuit or County Court, after notice of sale shall have
been advertised in the manner required by law in the case
of the sales of land under execution. The commissioner
shall report the sale to the court for its confirmation, and,
when confirmed, the court shall order the commissioner to
make a deed to the purchaser, which deed shall operate to
transfer to the purchaser such title and claim to the land

so forfeited to and vested in the Commonwealth as remains in it after the operation of § 6 of the article.

The money realized from the sale is to be distributed for the payment of costs, including the commissioner's and attorney's fee; second, to the county and State the proportion to which each may be entitled, together with interest and penalty as in this article provided; third, the remainder to be paid over to the former owner or claimant or his personal representative or assigns.

Section 8 provides that no action to enforce a forfeiture as authorized and provided in the article shall be instituted after the expiration of five years from the accrual of the right thereto.

Section 9 provides that no owner or claimant of any land in the Commonwealth shall be allowed to prevent the operation of the article by the payment, after January 1, 1906, of any amount less than the whole of the unpaid taxes, interest and penalties provided by law, that were charged and that should have been charged against said owner or claimant of said land and those under whom he claims, as of each and all of said five dates first mentioned in § 1 of the article; and where such payment is made after the passage of the act, it is provided that the amount to be paid shall be ascertained and payment made as in the article provided.

Section 10 provides that when, for any five successive years after the first day of August, 1906, any owner or claimant of or to any land in the Commonwealth shall fail to list the same for taxation and cause himself to be charged with the taxes properly chargeable thereon, or fail to pay the same as provided by law, then such failure shall be cause for the forfeiture of his title and claim thereto, and the transfer of the same to the Commonwealth of Kentucky; and it is made the duty of the Commonwealth's attorney to institute an action in the Circuit Court of the county wherein the land or any part thereof lies, for the

purpose of declaring the forfeiture, and for the sale of such parts thereof as, under the provisions of the article, are liable to sale, such actions and proceedings to conform to the provisions of article III as far as the same may be applicable.

Case No. 22 originated in a petition filed by the Commonwealth of Kentucky, through the Commonwealth's attorney, against the Kentucky Union Company, for the forfeiture, for failure to list and pay taxes upon some 40,000 acres of land in Leslie County, Kentucky, granted by letters patent of the Commonwealth of Kentucky, June 12, 1872, the proceedings resulting in a judgment of forfeiture, which was affirmed in the Court of Appeals of Kentucky, 128 Kentucky, 610.

Case No. 47 was a petition brought by the Eastern Kentucky Coal Lands Corporation under article III, for the assessment and taxation of the tracts of land in controversy, consisting of large bodies of land which the Eastern Kentucky Coal Lands Corporation claimed to be the owners of under patents issued under Virginia warrants, principally antedating the year 1789; and while the petition was dismissed upon the ground that the same did not conform to the requirements of the law, the Court of Appeals of Kentucky found that the constitutionality of the act was necessarily involved, and in an elaborate opinion by the Chief Justice sustained the validity of the law. 127 Kentucky, 667.

Case No. 48 was a proceeding by the Commonwealth's attorney in behalf of the State, against the Eastern Kentucky Coal Lands Corporation and others, for the forfeiture of the lands described, for the failure to list the lands and pay taxes as required by article III of the act of March 15, 1906, which resulted in the affirmance of the judgment rendered in the lower court forfeiting the title of the Eastern Kentucky Coal Lands Corporation to lands held in Pike County, Kentucky, under the old Virginia

titles and aggregating over 300,000 acres; and while the
case is not officially reported, the opinion of the Kentucky
Court of Appeals is found in 111 S. W. Rep. 362.

The conditions which led to the passage of article III of
the act of March, 1906, are elaborately set forth in the
opinion of the Chief Justice in 127 Kentucky, *supra*.
They are also more briefly stated in a report of the com-
mission appointed by the legislature of Kentucky to in-
vestigate and revise the taxing laws of the State, upon
whose recommendation the act in question was passed.

It would too greatly lengthen this opinion to quote the
history of the legislation so fully set forth in the opinion of
the Court of Appeals. It appears that the tracts in ques-
tion were formerly a part of the State of Virginia, and
prior to 1792, when Kentucky was admitted into the
Union, the State of Virginia had granted large tracts of
land in that part of the territory which is now eastern
Kentucky. These grants, often conflicting and over-
lapping, were made for small sums and for large tracts, the
grants ranging from 5,000 acres to 500,000 acres. Similar
grants were made in what is now the southwestern portion
of the State of West Virginia. The regions covered were
at the time unsettled and the lands of little present value.
They were not taken possession of by the original pat-
entees or those claiming under them, nor were the taxes
paid thereon, nor up to the passage of the act of 1906 had
taxes in any considerable amount been paid upon such
lands.

A number of acts were passed by the legislature of Ken-
tucky seeking to reach these lands for taxation. Some of
them were held unconstitutional, and up to the passage
of this act no effectual means had been found of subjecting
these lands to the payment of public taxes. Some of the
same lands were afterwards granted by the State of Ken-
tucky, and very considerable portions of them have been
occupied under grants from that State, and have been con-

tinuously occupied and cultivated by those claiming under such grants.

With these lands thus covered by conflicting grants from the State of Virginia and the later grants under the authority of the State of Kentucky, and in view of the failure of former legislation to require the same to be taxed, and the fact that the old grants were outstanding and affording no revenue to the State, and encumbering the titles of the occupants of the land and those under whom they claimed, it was sought by the act of 1906 to subject these lands to taxation and to forfeit these old titles which had not been effectually subjected to the taxing laws of the State, and to make the forfeited titles inure to the benefit of the occupying claimants, who had paid the taxes thereon in the manner provided by the law. Similar legislation, as we shall have occasion to see, was adopted in the State of West Virginia.

In elaborate arguments at the bar and in briefs covering many pages a most severe arraignment is made of the drastic character of this legislation and its alleged unfairness to the claimants of old titles under grants from the State of Virginia.

This court is concerned only with the constitutionality of the law in view of applicable provisions of the Federal Constitution. The State is left to choose its own methods of taxation and its form and manner of enforcing the payment of the public revenues, subject, so far as the Federal power is concerned, to the restricting regulations of the Constitution of the United States.

Passing questions which are purely of a state character and which were ruled upon against the contentions of the plaintiff in error by the Court of Appeals of Kentucky, we come to a consideration of the questions of a nature involving consideration of the Constitution of the United States.

It is first contended that the law in question imposes

penalties of a character which could not theretofore have been imposed upon the owner of the land, as a condition of saving the title from forfeiture under the provisions of article III. The Court of Appeals of Kentucky having intimated that the part of the law requiring the payment of penalty and interest was separable from the other features thereof, upon the rehearing, in 128 Kentucky, 610–624, held in answer to the contention that the taxes, interest and penalties provided by the act visited upon the delinquent greater penalties than he was subject to prior to the passage of the act, that the article, in so far as it required the payment of interest and penalties for the years covered by the act, is inoperative, and the delinquents for those years would be required to pay only taxes, without interest or penalty; and that the elimination of the interest and penalties for those years did not affect the other provisions of the article with respect to those years or years subsequent thereto.

We must therefore take the act as the Court of Appeals of Kentucky has construed it, stripped of the requirement to pay interest and penalties as a condition of saving the lands from forfeiture.

It is nevertheless contended—and this is the first objection of a Federal nature—that the law is *ex post facto*. It is to be noted in this connection that the law does not undertake to forfeit the lands only because of things done or undone prior to its passage, but because of the failure of the claimant to comply with the provisions of the law; and he is given until the first of January, 1907, in which to file a petition for the ascertainment of the taxes assessable and due upon his title, and until March 1, 1907, to pay the back taxes. But an *ex post facto* law and a retroactive law are entirely different things.

Laws of a retroactive nature, imposing taxes or providing remedies for their assessment and collection and not impairing vested rights, are not forbidden by the Federal

Constitution.  *League v. Texas,* 184 U. S. 156.  This court had occasion in a very early case to consider the meaning of an *ex post facto* law as the term is used in the Federal Constitution, prohibiting the States from passing any law of that character.  *Calder v. Bull,* 3 Dall. 386–390.  In that case it held that such laws, within the meaning of the Federal Constitution, had reference to criminal punishments, and did not include retrospective laws of a different character.  That case has been cited and followed in later cases in this court.  See *Kring v. Missouri,* 107 U. S. 221; *Orr v. Gilman,* 183 U. S. 278, 285.

In the latter case a former decision of this court, in *Carpenter v. Pennsylvania,* 17 How. 456, 463, opinion by Mr. Justice Campbell, was quoted with approval.  It was therein said:

"The debates in the Federal convention upon the Constitution show that the terms ' *ex post facto* laws' were understood in a restricted sense, relating to criminal cases only, and that the description of Blackstone of such laws was referred to for their meaning.  3 Madison Papers, 1399, 1450, 1579.

"This signification was adopted in this court shortly after its organization, in opinions carefully prepared, and has been repeatedly announced since that time.  *Calder v. Bull,* 3 Dall. 386; *Fletcher v. Peck,* 6 Cranch, 87; 8 Pet. 88; 11 Pet. 421."

The Kentucky statute as construed by the Court of Appeals of Kentucky imposes no penalty or punishment of a criminal nature and is not an *ex post facto* law within the meaning of the Federal Constitution.

It is next contended that the Kentucky statute under consideration denies to the plaintiffs in error due process of law, in violation of the Fourteenth Amendment to the Constitution.

This court has had frequent occasion to comment upon the effect of this Amendment in respect to laws of the

States for the levy and collection of taxes. A summary procedure has been sustained where the person taxed has been allowed opportunity to be heard in opposition to the enforcement of taxes and penalties against him. In *Mc-Millen* v. *Anderson,* 95 U. S. 37, 41, this court said:

"The mode of assessing taxes in the States by the Federal government, and by all governments, is necessarily summary, that it may be speedy and effectual. By summary is not meant arbitrary, or unequal, or illegal. It must, under our Constitution, be lawfully done."

See in this connection *Leigh* v. *Green,* 193 U. S. 79; *Ballard* v. *Hunter,* 204 U. S. 241, and cases therein cited.

Summary proceedings adapted to the circumstances and permitting the taxpayer to appear and be heard at some stage of the proceedings have been held to satisfy the requirements of due process of law. *Security Trust & Safety Vault Co.* v. *Lexington,* 203 U. S. 323.

The State of West Virginia, by its constitution, in 1872 inaugurated a system of forfeiture of lands for non-payment of taxes in some respects analogous to the one under consideration now. The West Virginia system was before this court in *King* v. *Mullins,* 171 U. S. 404. In that case due process of law, in connection with the taxing system of the State, was given full consideration; and the constitution of West Virginia, when read in connection with the statutes of the State, was held to afford due process of law. The constitution of the State of 1872, by article 13, § 6, made it the duty of every owner of land to have it entered on the land books of the county in which it, or a part of it, is situated, and to cause himself to be charged with the taxes thereon and pay the same; and when, for any five successive years after the year 1869, the owner of any tract of land containing one thousand acres or more should not have been charged on such books with the state tax on said land, then by operation of the constitution the land was forfeited and the title vested in the

State. The statute of the State provided for proceedings by the commissioner of the school fund to subject forfeited lands to sale, in which proceeding the owner was permitted to intervene by petition and obtain a redemption of his land from the forfeiture claimed by the State; and after a full discussion of the subject and the bearings of the Fourteenth Amendment of the Constitution upon the statute, Mr. Justice Harlan, who delivered the opinion of the court, said (p. 436):

"For the reasons stated, we hold that the system established by West Virginia under which lands liable to taxation are forfeited to the State by reason of the owner not having them placed or caused to be placed, during five consecutive years, on the proper land books for taxation, and causing himself to be charged with the taxes thereon, and under which, on petition required to be filed by the representative of the State in the proper Circuit Court, such lands are sold for the benefit of the school fund, with liberty to the owner, upon due notice of the proceeding, to intervene by petition and secure a redemption of his lands from the forfeiture declared by paying the taxes and charges due upon them, is not inconsistent with the due process of law required by the Constitution of the United States or the constitution of the State."

In the present case the statute does not undertake to forfeit the lands for the failure to register them and pay the taxes upon them for the years stated, without a judicial proceeding by which the owner of the title may have the taxes assessed and upon payment thereof the forfeiture avoided; and the forfeiture is declared only after a judicial proceeding instituted by the Commonwealth's attorney, in which there is opportunity for a hearing, and after which the forfeiture may be declared.

The case of *King* v. *Mullins, supra,* was followed and approved in this court in *King* v. *West Virginia,* 216 U. S. 92, and in *Fay* v. *Crozer,* 217 U. S. 455.

It is however insisted that although a hearing before forfeiture is provided the proceedings are so arbitrary and oppressive as to deprive the owner of due process of law, notwithstanding there is opportunity to appear and contest the forfeiture.

As bearing upon this alleged lack of due process in this statute it is contended that it cuts down the period of limitation in which actions may be brought by the holder of the title to recover against adverse claimants, and this because of the short time given in which to take proceedings against such claimants. The argument is that as § 6 of article III transfers the forfeited title to occupying claimants in actual adverse possession for five years next preceding the judgment of forfeiture, and as the statute of limitations for the recovery of real property in Kentucky is fifteen years, there was still ten years in which to have sued an occupying claimant of five years' standing, but because of the action required to prevent forfeiture under article III, which it is contended under the Kentucky constitution did not take effect until ninety days after the adjournment of the session at which it was passed, there was visited upon the owner the necessity of terminating the adverse possession by an action brought within six and one-half months. But we do not perceive in this indirect effect upon the statute of limitations any deprivation of due process of law. The state statute limiting actions between individuals cannot operate to affect the right of the State to require the registration of the lands withheld from taxation, or prevent acts for the summary registration or forfeiture of such lands, wherein, as in the case at bar, an opportunity, not unreasonable in character, is given for compliance with the laws after the same go into effect, and the forfeiture is had upon a proceeding in which the owner of the title is summoned and heard.

A time not unreasonably short for the beginning of actions may be fixed by the legislature, having in view par-

ticular conditions without violating the due process clause. *Terry* .v. *Anderson*, 95 U. S. 628.

Much is said .of the purpose of this law not being that of legitimate taxation, but intended to and in its operation having the practical effect of transferring the title of the owners to others. This argument is based upon the pro-. vision of the statute which makes the title, when forfeited to the State, inure. to the benefit of occupants in possession who have paid the taxes as provided in the act. This feature of the law, in substance, is in the West Virginia constitution, and was referred to in the opinion in *King* v. *Mullins*, 171 U. S. *supra*.

It is not a valid objection to a law of this character that the title forfeited to the State as the result of proper proceedings and due notice to the owner of the title who is in default for the payment of taxes, may be transferred to others occupying and paying taxes upon the lands and not in default. That the similar feature of the West Virginia constitution did not invalidate the law where opportunity was given for a hearing was held in *King* v. *West Virginia*, 216 U. S. *supra*, to have been concluded by *King* v. *Mullins*, *supra*, and the same doctrine was applied in *Fay* v. *Crozer*, 217 U. S. 455. This view may have the effect of subjecting the owner of the title which is forfeited to proceedings which divest. his title, notwithstanding another claimant may have paid taxes upon a separate title in the same land; but this consideration does not affect the validity of the law. The State may, so far as the Federal Constitution is concerned, tax each claimant of title upon the same premises and may, by a proper procedure, divest the owner of one in default.

Much comment is made upon the statement in the opinion of the learned Chief Justice of Kentucky, who spoke for the court in No. 47, as to the purpose of the State to in- .cidentally "outlaw" the titles claimed under the old Virginia grants for the benefit of occupying claimants, but as

was held in *King* v. *Mullins*, and the subsequent cases in this court following that case, this effect of a valid law of the State having also for its object the subjection of the lands to taxation, does not invalidate the law.

Nor do we find valid objection to the constitutionality of the law in the contention that the lands not transferred may be sold without adequate description.

This contention seems to have been made in case No. 22 by objections to the petition for failing to disclose what parts, if any, of the land were held by occupants who had paid taxes for five years preceding, and by objection to the judgment as erroneous because it did not segregate the parts to which the forfeited title would inure.

No mention appears to have been made of the Federal Constitution in this connection until petition for a rehearing, when it was objected that the statute in providing for the sale of the forfeited title furnished no means of identification or description of the land to be sold, nor for such an ascertainment of the holdings of occupying claimants as would enable a purchaser to know what was being offered for sale, and it was urged that a judicial sale in pursuance of such a proceeding would be no less than a sacrifice of the defendant's property, and that such an order would violate the due process of law secured by the Constitution.

In the opinion upon the petition for a rehearing the Court of Appeals announced that it found nothing in the statute which deprived the owner of due process of law within the meaning of the Fourteenth Amendment, the court having thus considered the Federal question, the objection is open here.

In the original opinion concerning this objection the court said:

"So far as disclosed by the record, there is no part of the tract held by occupants. But the court judicially knows, and it was admitted in argument, that practically, if not

quite, all the land described in the petition is adversely held by occupants under claim or color of title. The record shows only that the appellant is the owner or claimant of the title to the tract of land, which is specifically described, by metes and bounds, courses and distances, and that ap-. pellant has failed to comply with the provisions of the article with respect to the listing of it for taxes and the payment of taxes thereon. The petition contains all the allegations necessary to show that the appellant was delinquent, and its title subject to forfeiture, and the demurrer thereto was, therefore, properly overruled. Nor is the judgment erroneous on that ground. Certainly the title to the tract of land described in the petition, and which is adjudged to be subject to forfeiture and sale, can be sold by the same description, the purchaser taking that which, under the article, passes at the sale. The doctrine of *caveat emptor* applies in this, as in other proceedings. And the purchaser, and not the occupant, as argued by counsel for appellant, would be required to show, in actions to recover under his purchase, that the land claimed by him was not of the excluded class. The rule is universal that where one seeks to recover under a grant or deed which does not convey all the land within the boundary described, he must show that the land sought to be recovered is within the boundary and without the exclusions. *Hall* v. *Martin*, 89 Kentucky, 9.

"The act provides that the deed shall transfer to the purchaser the title and claim: 'So forfeited and transferred to, and vested in, the Commonwealth, as remains in it after the operation of section six of this article, and shall so recite.'

"The article, taken as a whole, clearly shows that such was the legislative intent. It is not necessary for the petition to describe more than the tract of land the title to which is sought to be forfeited.

"After the judgment of forfeiture becomes final, the

main purpose to be conserved is the interest of the Commonwealth, and circumstances might arise or be shown to exist that would authorize different modes of executing it. We have no hesitancy in holding that it is not necessary for the judgment to ascertain and describe the parts of the tract held by occupants. If, at the hearing, it should be made manifest that the title as to certain parts only of the tract would pass to the purchaser under a sale, the statute would be complied with by a sale of the title covering those parts alone. In any event, it is the duty of the court to prescribe what parts thereof shall be sold, if less than the whole is to be sold. Therefore, the judgment appealed from, in so far as it authorizes the commissioner to sell the tract as a whole or in parcels, to suit the purchaser, is erroneous."

As we construe this part of the opinion, it means that it was not necessary in the petition for forfeiture to point out and describe the parts of the tract held by occupants. But from what is said in the latter part of the paragraph just quoted we think that it is apparent that the defendant might show what parts of the land were subject to sale, if less than the whole was to be sold. That is, while in the absence of a showing in this matter, a sale in gross would be ordered, it was nevertheless open for the defendant to show that only a part of the tract, in view of other provisions of the statute, would be subject to sale. With the opportunity to be thus heard, and have a definite ascertainment of the parts to be sold, we think the statute, as construed by the Court of Appeals of Kentucky, does not deprive the defendant of due process of law in this respect.

It is alleged that there was an offer to pay the taxes properly assessable against these lands, notwithstanding which they were declared forfeited; but an inspection of the record shows that such offer was in effect an offer of compromise, not justified by the statute and not in accord with its terms.

The denial of the prayer of the petition involved in case No. 47, because the same did not contain a description of the land sufficient to identify it, which was the basis of the decision of the Kentucky Court of Appeals, presents no Federal question. Whether that petition contained an adequate description was a question for the State to determine in the construction of its own statute. There is nothing to show that the ruling made upon that subject was so arbitrary and baseless as to amount to a deprivation of due process of law.

It is next contended that the statute denies the equal protection of the laws within the meaning of the Fourteenth Amendment, because it does not apply equally upon all the lands in the State. The fact that in its application it can only meet conditions such as are embraced within the law in a part of the counties of the State does not render it obnoxious to the Fourteenth Amendment. *Florida R. R. Co.* v. *Reynolds,* 183 U. S. 471.

This court has frequently held that the State may classify the subjects of taxation, so long as all persons similarly situated are treated alike. *Michigan Central R. R. Co.* v. *Powers,* 201 U. S. 245. This law applies with equal force to all who are in a condition to come within its terms.

The fact that the plaintiff in error did not acquire the land until after the delinquencies had occurred cannot prevent the operation of the law against it. In such cases the doctrine of innocent purchasers does not apply. *Citizens' Natl. Bank* v. *Kentucky,* 217 U. S. 443.

Another ground of objection under the Federal Constitution is insisted upon in the alleged violation of the Virginia Compact of 1789, embodied in the constitution of Kentucky, and held by this court to be a binding contract between the States. By the seventh section of that compact it is provided:

"SEC. 7. Third, that all private rights and interests of lands within the said district [Kentucky] derived from the

laws of Virginia prior to such separation shall remain valid and secure under the laws of the proposed State and shall be determined by the laws now existing in this State."

Section 8 provides that a neglect of cultivation or improvement of any land within either the proposed State or the Commonwealth of Virginia belonging to non-resident citizens of the other, shall not subject such non-residents to forfeiture or other penalty within the term of six years after the admission of the said State (Kentucky) into the Federal Union.

Section 9 provides that no grant of land or land warrant to be issued by the proposed State shall interfere with any warrant theretofore issued from the land office of Virginia, which shall be located on land within the said district, now liable thereto, on or before the first day of September, 1791.

This compact has been the subject of frequent consideration in the courts of Kentucky and more than once in this court.

In the case of *Green* v. *Biddle,* 8 Wheat. 1, the effect of this compact upon certain laws of the State of Kentucky was considered and determined. The case was twice argued, on the first hearing the opinion being given by Mr. Justice Story, and upon rehearing the opinion was given by Mr. Justice Washington. In that case it was held that the seventh article of the compact meant to secure all private rights and interests derived from the laws of Virginia as they were under the then existing laws of that State, and that laws of the State of Kentucky which undertook to prevent the owner of the land from a recovery thereof, without certain payments to the tenant in possession, impaired the obligation of the contract and were, therefore, null and void.

Under the Kentucky statutes the owner could not recover his property without paying for improvements made by the occupying claimant and making allowances in con-

nection therewith, which it was 'held had the effect of depriving the true owner of the property vested in him under the laws of Virginia at the time the compact became operative in 1789. " He [the owner] is no more bound," said Mr. Justice Story, "by the laws of Virginia to pay for improvements, which he has not authorized, which he may not want, or which he may deem useless, than he is to pay a sum to a stranger for the liberty of possessing and using his own property, according to the rights and interests secured to him by those laws. It is no answer that the acts of Kentucky, now in question, are regulations of the remedy, and not of the right to lands. If those acts so changed the nature and extent of existing remedies, as materially to impair the rights and interests of the owner, they are just as much a violation of the compact as if they directly overturned his rights and interests."

These conclusions were adhered to upon a rehearing and reaffirmed in the opinion of Mr. Justice Washington.

The Virginia compact came again before this court in the case of *Hawkins* v. *Barney's Lessee*, 5 Pet. 457. In that case the validity of a law of Kentucky which undertook to limit the right of bringing suits for the recovery of lands to seven years, instead of twenty, as was 'the case under the laws of Virginia at the time the compact was made, was sustained. The case of *Green* v. *Biddle* was reviewed, and it was said that, "looking through the course of legislation in Virginia, there was found no principle or precedent to support such laws, the court was induced to pass upon them as laws calculated in effect to annihilate the rights secured by the compact, while they avoided an avowed collision with its literal meaning. But in all their reasoning on the subject they will be found to acknowledge that whatever course of legislation could be sanctioned by the principles and practice of Virginia would be regarded as an unaffected compliance with the compact."

And Mr. Justice Johnson, who spoke for the court in that case, said:

"It can scarcely be supposed that Kentucky would have consented to accept a limited and crippled sovereignty; nor is it doing justice to Virginia to believe that she would have wished to reduce Kentucky to a state of vassalage. Yet it would be difficult, if the literal and rigid construction necessary to exclude her from passing this law were to be adopted, it would be difficult, I say, to assign her a position higher than that of a dependent on Virginia. Let the language of the compact be literally applied, and we have the anomaly presented of a sovereign State governed by the laws of another sovereign; of one-half the territory of a sovereign State hopelessly and forever subjected to the laws of another State. Or a motley multiform administration of laws, under which A would be subject to one class of laws, because holding under a Virginia grant; while B, his next-door neighbor, claiming from Kentucky, would hardly be conscious of living under the same government."

And the learned judge referred to the language of the eighth article of the compact, recognizing the power of Kentucky to pass similar laws to those which existed in Virginia, after the period of six years; referring to the laws of Virginia, where one who had received a grant of land had failed, at first in three and afterwards in five years, to seat and improve it, and was held to have abandoned it as lapsed and forfeited land, and any one might take out a grant for it.

We think the effect of these decisions is to declare that while the Virginia compact prevents the cutting down of the titles secured under the State of Virginia prior to its date, so as to take away substantial rights incident to the title, as was the case in *Green* v. *Biddle, supra,* it did not mean to prevent the State, upon notice and hearing, from requiring the registration of land titles for taxation, or, in

default thereof, from forfeiting such titles to the State. These laws do not have the effect of taking away legitimate rights secured by the old grants, but enable the new sovereign to enforce against such lands, as well as others, the taxing laws of the State. It was of course recognized that the land would pass under the dominion of a new State, which would require revenues for its support, and while the title obtained from the State of Virginia was protected, it was not intended that it should be immune from constitutional laws having the effect to subject such lands to the taxing power of the new sovereignty and to require their owners, by all proper methods, to contribute their share to the public burdens of the State.

As we have said, many considerations are urged against the policy and justice of this statute, and other objections are made which depend solely upon the laws of the State and their interpretation by the courts of the State. We are unable to find that rights secured by the Federal Constitution were denied by the judgments of the Court of Appeals of Kentucky.

The judgments in each and all of the cases are therefore

*Affirmed.*