PORTER, Price Administrator, v. SEND-EROWITZ et al. (two cases).

Nos. 9156, 9193.

Circuit Court of Appeals, Third Circuit.

Argued July 22, 1946.

Decided Aug. 19, 1946.

Writ of Certiorari Denied April 7, 1947.

Joseph Forer, Director, Apparel & Industrial Materials Enforcement Division, of Washington, D. C. (George Moncharsh, Deputy Adm'r for Enforcement, Milton Klein and David London, Directors, Litigation Division, Samuel Mermin, Chief, Special Litigation Branch, and Albert J. Rosenthal, Atty., Office of Price Administration, all of Washington, D. C., Kenneth V. Fisher, Regional Litigation Atty., of New York City, and Harry W. Steinbrook, Dist. Enforcement Atty., of Philadelphia, Pa., on the brief), for Administrator.

Julius M. Rapoport, of Allentown, Pa., (William J. Mahon and Albert I. Schmalholz, both of New York City, on the brief), for defendants.

Before MARIS, GOODRICH, and Mc-LAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

This action was brought by the Administrator of the Office of Price Administration pursuant to Section 205(e) of the Emergency Price Control Act of 1942.[1] For the purpose of discussion here we may divide the relief asked for into three parts.

First. This is concerned with the application for equitable relief. This relief was granted by the court.

Second. There was asked for and granted a judgment for treble damages in the amount of $1,257.15 for sales at over-ceiling prices of certain styles of articles which the defendants manufactured. Judgment for the plaintiff was given on these items.

Third. This is a claim for treble damages for alleged overceiling sales on other articles manufactured and sold by defendants. These sales, it was alleged, amounted to $49,611.39 and for them the plaintiff claims treble damages of $148,834.17. On this part of the claim recovery was denied. Both parties appeal.

With regard to the defendants' appeal, little need be said. Defendants did not deny that sales of the articles in question (second division above) were made but press the point that it was not shown that the sales were to wholesalers and retailers, which was necessary to bring them within the defined category in an order fixing maximum ceiling prices. This point cannot be sustained. The court found the sales in violation of the order and the evidence on which that finding was based was such that we cannot possibly say that the finding was clearly erroneous. Furthermore, the court found that the sales by defendants which were at prices in excess of the maximum prices "were either wilful or the result of defendants' failure to take practical precautions against the occurrence of such violations. Defendants' conduct was in complete disregard of the requirements of the General Maximum Price Regulations and the duties imposed upon them by law."

---

[1] "(e) *If any person selling a commodity violates a regulation*, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the violation, except as hereinafter provided, bring an action against the seller on account of the overcharge. In such action, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is the greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine: * * * *If any person selling a commodity violates a regulation*, order, or price schedule prescribing a maximum price or maximum prices, and the buyer either fails to institute an action under this subsection within thirty days from the date of the occurrence of the violation or is not entitled for any reason to bring the action, the Administrator may institute such action on behalf of the United States within such one-year period. * * * *" [Italics ours.] Act Jan. 30, 1942, 56 Stat. 34, as amended by Act June 30, 1944, 58 Stat. 640, 50 U.S.C.A.Appendix, § 925(e).

We think these findings dispose of the case so far as the defendants' appeal is concerned. They clearly justify the action of the court in awarding treble damages in the sum named above and in giving to the plaintiff the injunctive relief sought.

We now turn to the phase of the case brought up by the Administrator's appeal. This poses a difficult question and is the chief one discussed in briefs and argument for each side. We shall try to state it briefly in order to bring the issue into focus, leaving details for elaboration in the margin.

The defendants are manufacturers of underwear in Allentown, Pennsylvania. The articles which were sold at the alleged improper price were men's and boys' shorts.[2] The sales took place between March, 1943, and April, 1944. The articles in question were not part of the general line of such garments manufactured by the defendants in 1942 and were not, therefore, within the terms of the general "freeze" with regard to price.[3]

During the period when these sales were made, a method of fixing ceiling prices of articles not included in a manufacturer's former line of goods was fixed by the Office of Price Administration. Up until May 29, 1943, the manufacturer was directed to get specific authorization from the Office of Price Administration to calculate a proper maximum price according to a prescribed formula and then to report the calculated price within ten days, subject to adjustment by the Administrator.[4] On May 29, 1943, the process was simplified to eliminate the necessity of prior authorization for calculating the maximum price under this Section.[5] These defendants did not conform either to the regulation in its

---

2 The Trial Judge found that the defendants had sold 8,944 ½ dozen men's shorts, style 467, 29,990 ½ dozen men's shorts, style 259, and 7,428 ½ dozen boys' shorts, style 259(b) between July 13, 1943, and July 14, 1944. He further found that the defendants submitted self-determined maximum prices, on August 1, 1944, on only styles 467 and 259. Note that the Trial Judge did not pass upon the question of whether or not there had been a determination of a maximum price for style 259(b).

3 General Maximum Price Regulation § 1499.2, 7 Fed.Reg. 3153 (1942); 2 OPA Gen. 20,103 (1944). The GMPR section applies to the price "freeze" policy of commodities or services **in existence in March,** 1942. This section has remained effective since the date of publication.

4 General Maximum Price Regulation § 1499.3(b), 7 Fed.Reg. 3154 (1942). This regulation was effective from May 11, 1942, to date of effectiveness of Amendment 54 on May 29, 1943. This regulation was in force at the time defendants commenced the manufacturing and selling of the discussed garments.

5 General Maximum Price Regulation § 1499.3(b), as amended by Amendment 54, 8 Fed.Reg. 6962 (1943) became effective May 29, 1943. This amended section continued in force for the remainder of the period of manufacturing and selling, such activity of defendants was discontinued in April, 1944. The section reads as follows:

"§ 1499.3 *Maximum prices for commodities and services which cannot be priced under § 1499.2* The seller's maximum price for a commodity or service which cannot be priced under § 1499.2 [the 1942 price "freeze" policy] of this General Maximum Price Regulation *shall be a maximum price in line with the level of maximum prices established by this General Maximum Price Regulation.* Such price shall be determined by the seller in accordance with the following procedures * * *

"(b) In the case of a sale, other than at wholesale or retail, of a commodity for which a maximum price or pricing method has not been specifically authorized by the Office of Price Administration,

"(1) The seller (i) shall select a comparable commodity for which a maximum price has been established under § 1499.2 (a) (1) of this regulation; (ii) shall divide his maximum price for the comparable commodity by its current direct cost; and (iii) multiply the percentage so obtained by the current direct cost of the commodity being priced. All customary discounts, trade practices, and practices relating to the payment of transportation charges in effect with respect to the sale of the comparable commodity shall apply to such maximum price."

"*Within ten days after determining a maximum price under this subparagraph (1), the seller shall report such price to the appropriate field office of the Office of Price Administration* upon a form, duly filled out, copied from the form contained in Appendix C of this regulation. *The price so reported shall be subject to adjustment at any time by the Office of Price Administration.* * * *" [Italics, except the heading, ours.]

original form or as amended.[6] They simply went ahead and manufactured the goods and sold them for the price fixed by themselves.

The chronology of events thereafter is important to bear in mind. In June, 1944, the plaintiff began an investigation of the defendants' records. In July, 1944, the plaintiff's complaint was filed. In August, 1944, after the complaint was filed and about three months after the sale of the garments had ended, the defendants filed the type of report required by regulations. This report included prices for but two of the three styles manufactured, sold, and subject to investigation.

Now we come to the critical dates. By an order on October 20, 1944, the Administrator stated that the determination of maximum prices by defendants was not in line with the level of maximum prices and made an order establishing a maximum price for styles 467 and 259 with which we are here concerned. These prices were lower than those submitted by defendants and lower than the prices at which the garments had been sold.[7] Then, finally, on May 8, 1945, this order was amended to make the adjusted maximum prices cover, retroactively, the period during which the sales in question were made.

█ These dates constitute the material out of which our legal problem is made. The Administrator is seeking damages to recover three-fold the differences between what the defendants did sell their goods for and what the Administrator says they should have sold them for. But the Administrator did not make his order fixing the price at which he says the goods should have been sold until ten months after his lawsuit was begun. Defendants urge with great force that the Administrator cannot have a recovery for violation of a price ceiling which was not established for nearly 13 months after the sales in question were made. This view appealed to the Trial Judge who held that the plaintiff could not recover for these items. He based his decision on the well established rule of law that a plaintiff cannot recover unless the facts which constitute his cause of action are in existence at the time he

---

[6] The Statement of Consideration published with Amendment 54 stressed the fact that under the amended General Maximum Price Regulation § 1499.3(b), note 5 supra, the seller would be allowed to compute his own maximum price, by means of the above quoted formula, then offer his commodities for sale, and subsequently file his price data, rather than apply to the Office of Price Administration prior to selling his commodity. The pertinent section of the Statement of Consideration is as follows:

"Heretofore, a manufacturer producing a new commodity not sold by him or by competitive sellers during the base pricing period was required to apply to the Office of Price Administration in each instance for authority to determine a maximum price, which authorization has been given in the form of an order prescribing either specific maximum prices or a method of determining maximum prices. In view of the large number of manufacturers, and in view of the large number of new commodities produced by them, this procedure has imposed a great administrative burden on the Office of Price Administration and has also made it difficult to price new products sold by manufacturers expeditiously and on a completely uniform basis.

"The new pricing method, by permitting a manufacturer automatically to determine his own maximum price, will eliminate the need for the Office of Price Administration issuing orders in each specific case. The new pricing method makes use of a very simple formula for the computation of a maximum price. * * *" 2 OPA Gen. 20,239 (1944).

| [7] Style | Defendants' Computed Maximum Prices | Defendants' Sale Price | OPA Prices |
|---|---|---|---|
| 467 | $3.15/dozen | 3,579 ½ dozen @ 2.90/doz. | $1.67/doz. |
| | | 1,948 dozen @ $3.00/doz. | |
| | | 3,417 dozen @ $3.15/doz. | |
| 259 | $2.50/dozen | 750 dozen @ $2.375/doz. | $1.50/doz. |
| | | 29,240 ½ dozen @ $2.50/doz. | |
| 259(b) | No maximum price computed | 6,478 ½ dozen @ $2.375/doz. | No price reported |
| | | 950 dozen @ $2.50/doz. | |

begins his lawsuit.[8] The general principle is, of course, indisputable. If it applies here the conclusion reached in the District Court must stand.

■ It is well, at the outset of the discussion, to rid the case of any suggestion that we have here an instance of a citizen pursuing his ordinary lawful business and, while so doing, being harrassed by a bureaucracy. These defendants were pursuing their business in wartime. They, and everybody else, were being subjected to certain controls devised to win the war and preserve the domestic economy so far as possible. They were engaged in the production of a line of merchandise which was subject to emergency wartime regulation. Part of that regulation required them to give notice and submit data when they introduced to the trade a new article not covered by already existing regulations. This defendants did not do, as already shown in the quotation from the finding of the facts of the Trial Judge. But, instead, they proceeded "in complete disregard of * * * the duties imposed on them by law." Had they done what they were required to do by way of furnishing to the Office of Price Administration the relevant data and fixed their ceiling price in accordance with the requirements, they would have had complete protection for themselves as to all sales made up until the time the Administrator objected to such price as they fixed.[9] We regard this fact as of high importance. In view of it any equity to be urged for the defendants disappears.

■ We think it no answer to the importance of this point to say that the Administrator might have demanded the information from the defendants and secured court help to get it if they refused. It is true that the statute makes provision for such process,[10] although the road to it with regard to acts done by defendants before the Administrator asks for the information is not entirely a path of roses.[11] In discussing what the Administrator could or could not do, we must keep in mind the situation in which his office operated. The undertaking to police prices in every industry of the country was, in itself, a tremendous one. Whether the undertaking was too ambitious to be successfully accomplished is a matter upon which judicial opinion is irrelevant. The point is that the undertaking was immense. It is a matter of common knowledge that manufacturers, embarrassed by price ceilings in established lines, introduced new items which were not subject to the general freezing regulations. The Office of Price Administration could not possibly know,

[8] United States v. McCord, 1914, 233 U.S. 157, 34 S.Ct. 550, 58 L.Ed. 893; American Bonding & Trust Co. et al. v. Gibson County, 6 Cir., 1906, 145 F. 871, 7 Ann.Cas. 522.

[9] Under GMPR § 1499.3(b), prior to amendment, note 4 supra, there was no problem of protection because the manufacturer first had to obtain authorization to determine a price, and with the authorization he received a formula to be followed. Under GMPR § 1499.3(b) amended by Amendment 54, note 5 supra, however the manufacturer was allowed to compute his own maximum price from the formula contained in the amended section, then offered his goods for sale and file his price within ten days of computation. The provision granting the manufacturer protection found in the Statement of Consideration to Amendment 54 is as follows: " * * * Within ten days after determining a maximum price in this manner, the manufacturer is required to report such price to the appropriate field office of the Office of Price Administration, upon a form copied from the form set out in Appendix C of the regulation. *Although the maximum price so reported is subject to review by the Office of Price Administration, the manufacturer may sell at the price he has reported until and unless the Office of Price Administration disapproves it. Adjustments in reported prices may be made by the Office of Price Administration, but they will not apply retroactively. * * * "* [Italics ours.] 2 OPA Gen. 20,-239, 20,240 (1944).

[10] 56 Stat. 33, Section 205(a, b), 50 U.S.C.A. Appendix, § 925(a, b). This section considers the subjects of injunctions and enforcing orders plus punishment for violations.

[11] Porter, Administrator, v. Sherwood Distilling Company, 4 Cir., May 23, 1946, 156 F.2d 264. Here the Administrator sought a mandatory injunction to require defendants to file an application for maximum prices on goods that were sold before maximum prices on the goods were established in 1943.

440

simultaneously with the appearance of these thousands of items, what their nature was and whether they were being brought out in conformity with the general plan of price regulation. It did provide a way, as already indicated, by which a manufacturer with a new item could bring his facts to the Office of Price Administration and secure from it a ruling upon them. If the regulation was believed to be improper the party aggrieved had recourse to court review in the Emergency Court of Appeals. It is in the light of what the defendants failed to do and the administrative, legal and judicial machinery provided to protect their rights that this case must be considered.

■ We get down, therefore, to the legal question whether the Administrator can recover statutory damages for a violation of a regulation when the amount of damages is to be measured by a ceiling price which was not in existence at the time the violation occurred. We may dismiss quickly the proposition that such recovery, even at treble damages, is in violation of the ex post facto provisions of the Constitution. Art. 1, § 9, cl. 3. The limitation of this clause to actions strictly criminal in their nature is too well established to require learned elucidation at this late date.[12]

■ It is established, also, that retroactive requirements are not in violation of any Constitutional right if they are reasonable in their nature.[13] Retroactivity within the law has been a recognized principle in cases to correct administrative errors,[14] and in situations where administrative orders were required to establish liability in suits already pending.[15] The effect of retroactivity also has been applied in order to effectuate a legislative policy.[16] Currently it has been used in litigation involving rent controls.[17] For a considered study of retroactivity in the law see Stimson's discussion "Retroactive Application of Law—A Problem in Constitutional Law." [18]

■ We think the rule cited by the learned District Judge is not applicable to block this suit. The operative fact out of which the action grows is the sale. That sale took place after the price control act had been passed and regulations under it established which forbade sales of new commodities prior to being priced in accordance with a regulatory formula, and prior to notice to and approval of the Administrator.[19] The regulation also required that a seller's maximum price be in line with the level of maximum prices established by the regulation. These defendants made a series of sales. They did not know whether the sales were over price ceiling or in line with the level of maximum prices which existed at the time of

[12] Bankers Trust Co. v. Blodgett, 1923, 260 U.S. 647, 43 S.Ct. 233, 67 L.Ed. 439; Kentucky Union Co. v. Kentucky, 1911, 219 U.S. 140, 31 S.Ct. 171, 55 L.Ed. 137; Calder v. Bull, 1798, 3 Dall. 386, 1 L.Ed. 648.

[13] See Mr. Justice Holmes' analysis in Danforth v. Groton Water Co., 1901, 178 Mass. 472, 59 N.E. 1033, 86 Am.St.Rep. 495.

[14] Graham et al. v. Goodcell, 1931, 282 U.S. 409, 51 S.Ct. 186, 75 L.Ed. 415; Wright & Taylor v. Lucas, 6 Cir., 1930, 45 F.2d 75, affirmed 1931, 282 U.S. 409, 51 S.Ct. 186, 75 L.Ed. 415.

[15] Addison v. Holly Hill Fruit Products, Inc., 1944, 322 U.S. 607, 64 S.Ct. 1215, 88 L.Ed. 1488; General American Tank Car Corp. v. El Dorado Terminal Co., 1940, 308 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361; El Dorado Oil Works v. United States, April 22, 1946, 66 S.Ct. 843 (Upholding retroactive order issued as a result of General American Tank Car case, supra).

[16] Guaranty Trust Co. of New York v. Henwood, 1939, 307 U.S. 247, 59 S.Ct. 847, 83 L.Ed. 1266 (Upholding the Joint Resolution of June 5, 1933 which made bonds dischargeable by payment of current legal tender of United States money. This Resolution applied to contracts in existence at time Resolution was passed); Norman v. Baltimore & Ohio R. Co., 1935, 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885, 95 A.L.R. 1352 (Upholding the gold clause of the Joint Resolution of June 5, 1933 and applying it to contracts in existence at the time the resolution was passed).

[17] See Bowles v. Dasher, 1945, 68 F.Supp. 742; Bowles v. Electromatic Distributors, Inc., et al., 1946, 68 F.Supp. 977.

[18] Stimson, Retroactive Application of Law—A Problem in Constitutional Law (1939) 38 Mich.L.Rev. 30.

[19] 56 Stat. 23, Sections 1(a), 2(a) (1942), 50 U.S.C.A.Appendix, §§ 901(a), 902(a). General Maximum Price Regulation § 1499.3(b), 7 Fed.Reg. 3154 (1942).

the sales. This ignorance was caused by their failure to furnish the information, as required by the regulation, which would have permitted the necessary mathematical determination of a ceiling price. The defendants did not furnish the information until after a suit against them had been started. Then they were told, a conclusion not surprising in view of the evidence, that they had charged too much. The reason that the statutory damages for the defendants' sales without ceiling prices could not be determined at the commencement of the suit was because of their withholding of information which would have enabled the Administrator to compute a ceiling price. We think, under the circumstances, that they are in no position to complain of the legal consequences of what they knowingly did, which could not be ascertained at the moment the act was done.

■ We think there is another reason why the defendants must lose on this phase of the case. Jurisdiction to determine the validity of a regulation of the Office of Price Administration is vested exclusively in the Emergency Court of Appeals.[20] The learned Trial Judge recognized this perfectly, but in deciding the case on the basis he did,[21] was he not necessarily passing on the validity of the regulation one way or the other? That question is not easily answered. We think, however, that in reaching the result which was obtained, in declaring the defendants not liable for the sales made without compliance to the policy of the Emergency Price Control Act and the requirements of a price control regulation, there was in effect a determination that the regulation is not binding. That is, we think, a de-

termination of the validity of a regulation and something which neither the District Court nor we are given authority to pass upon. That question must go to the tribunal provided by Congress for that purpose.

■ Only one question remains, that has to do with defendants' argument that a subsequent amendment to regulations so changed the procedure as to make the violation complained of not applicable to them. This argument results from the defendants' consideration of the General Maximum Price Regulation solely as a "freeze" regulation. Such a consideration lacks an appreciation of the immensity of the price control program. It is accurate to regard Section 1499.2 of the regulations as announcing a price freeze policy of commodities and services according to a 1942 reference point.[22] The regulations were designed, however, with recognition of the fact that new commodities, differing from 1942 products, would be produced and in fairness demand a more elastic method of price computation. Therefore Section 1499.3 was published at the inception of the regulatory program to control the prices of new commodities, and is still in force.[23] Ever since the origin of the regulations in 1942 the policy has been that of keeping individual maximum prices in line with the level of maximum prices established by the regulations. To effectuate this policy the Administrator has always had the power to adjust submitted maximum prices at any time. Upon inspection of the subsequent amendments it is evident that only a change in the form of statement has occurred and not a change in the Administrator's powers of adjustment.[24]

---

[20] 56 Stat. 32, Section 204(d) (1942), 50 U.S.C.A.Appendix, § 924(d).

[21] At the conclusion of the plaintiff's evidence, defendants moved for the dismissal of the action or for judgment in their favor and rested. The Trial Judge found that the defendants violated General Maximum Price Regulation § 1499.3(b) (1) in that they did not report their maximum prices within the time permitted by the regulation. The Trial Judge awarded no statutory damages to the plaintiff. He reasoned that the plaintiff did not state a cause of action for treble damages based upon the sales made by the defendants be-

cause no ceiling prices had been in existence at the time the suit was filed.

[22] General Maximum Price Regulation § 1499.2, 7 Fed.Reg. 3153 (1942), 2 OPA Gen. 20,103 (1944).

[23] General Maximum Price Regulation § 1499.3(b), 7 Fed.Reg. 3154 (1942), as amended by Amendments 54 and 61, 8 Fed.Reg. 6962 (1943), 9 Fed.Reg. 5169 (1944).

[24] "Sec. 2. (a) Whenever in the judgment of the Price Administrator (provided for in section 201) the price or prices of a commodity or commodities have risen

The defendants' argument upon this point must, therefore, be rejected.

Since this case was submitted, a decision in the 9th Circuit has come down in which the result reached by the court is in line with the view we have expressed above. Martini et al. v. Porter, Administrator, 9 Cir., July 18, 1946, 157 F.2d 35.

The judgment against the defendants for $1,257.15 and the injunction against the defendants is affirmed in regard to appeal No. 9193. In regard to appeal No. 9156 the dismissal of the plaintiff's claim for treble damages regarding sales of styles 467, 259 and 259(b) is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

or threaten to rise to an extent or in a manner inconsistent with the purposes of this Act, he may by regulation or order establish such maximum price or maximum prices as in his judgment will be generally fair and equitable and will effectuate the purposes of this Act. * * * " 56 Stat. 24, Sec. 2(a) (1942), 50 U.S.C.A. Appendix, § 902(a).

From the original of General Maximum Price Regulation § 1499.3 the regulation has always contained the qualification that the seller's maximum price when computed should be a maximum price in line with the level of maximum prices established by the regulations, and that the price so reported would be subject to adjustment at any time by the Office of Price Administration. GMPR § 1499.3, 7 Fed.Reg. 3154 (1942), 8 Fed.Reg. 6962 (1943), 9 Fed.Reg. 5170 (1944); 2 OPA Gen. 20,107 (1944); 2 OPA Gen. pp. 20,243–20,248 (1944) (Statement of Consideration to Amendment 61). This adjustment, of course, would be made to bring the price in line with the level of maximum prices established by the regulation.