KING v. BUSKIRK et al.

(Circuit Court of Appeals, Fourth Circuit. May 7, 1912.)

No. 1,052.

TAXATION (§ 648*)—SUIT FOR SALE OF LANDS FORFEITED FOR TAXES—JUDG-
MENT—CONCLUSIVENESS OF ADJUDICATION—ADJUDICATION OF TITLE—
WEST VIRGINIA STATUTE.

Under Code W. Va. 1899, c. 105, §§ 6, 18, which authorize any person
claiming an interest to intervene by petition and become a party to a
suit by the state for the sale of land forfeited for nonpayment of taxes,
give the court jurisdiction to determine all questions of title, and provide
that, if it shall be found that any part of the land in question has been
sold by the state, the bill shall be dismissed as to such land, a decree in
such a suit adjudging that certain land had been previously sold to a pe-
titioner is conclusive as to his title and against the right of the defendant
to redeem such land.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1316; Dec. Dig.
§ 648.]

Appeal from the Circuit Court of the United States for the South-
ern District of West Virginia, at Charleston.

Suit in equity by Henry C. King against U. B. Buskirk, trustee,
and Alexander Stafford. Decree for defendants, and complainant
appeals. Affirmed.

On April 30, 1908, the plaintiff below, Henry C. King (appellant here), filed
his bill in the court below against U. B. Buskirk, trustee, and Alexander Staf-
ford, in which he alleges himself to be a citizen of the state of Ohio and the
defendants to be citizens of the state of West Virginia; that in a suit insti-
tuted by the state of West Virginia on May 7, 1894, a final decree was entered
therein by the circuit court of Wyoming county, whereby it was decreed that
he was entitled to, and, by reason of the payment of the amount of taxes, in-
terest, and costs accrued, had redeemed from forfeiture a tract of 500,000
acres of land known as the Robert Morris tract; that prior to the institu-
tion of this suit by the state Jesse R. Irwin and Alva Irwin, who were par-
ties thereto, were claiming to be owners of another Morris tract of 480,000
acres adjacent to, but wholly outside of and in no way conflicting with, the
500,000-acre tract, but, by reason of an erroneous resurvey thereof, said Irwins
claimed a part of said 500,000 acres as covered by the 480,000-acre survey;
that all the land claimed by the Irwins had been sold to the state for delin-
quent taxes, as an undescribed, unascertained, and unascertainable 20,000 acres
in Logan county, and all the Irwins' claim of title had vested in the state
prior to the decree in the case of State v. King, whereby such claim of title
by the Irwins had become irredeemable; that long afterwards, in June, 1897,
the state brought her suit in Logan county against Irwins and others, but to
which suit plaintiff was not made a party, the object of which was to sell
this 20,000-acre Irwin claim of title as forfeited; that plaintiff knew nothing
of the pendency of this suit until his counsel by chance saw a sale notice of
the land, proposed to be made in July, 1898, by the commissioner of school
lands for Logan county; that knowing Irwins had claimed part of his (King's)
500,000-acre tract, and, fearing this sale of their title might include erro-
neously a part of his 500,000 acres, he, by his counsel, applied to the Circuit
Court of the United States for the then District of West Virginia for an in-
junction to restrain said school commissioner from making such sale, which
injunction was granted; that said commissioner, Hinchman, reported the is-
suance of such injunction against him to the circuit court of Logan county,
which court on August 3, 1898, entered an order directing Hinchman to dis-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

regard the injunction, consummate the sale, and ruling counsel for plaintiff, King, to answer for contempt in interfering with its officers; that, under such contempt proceeding, his counsel was tried, found guilty, and imprisoned for about 10 days until released under a writ of habeas corpus by the federal court; that while his counsel was so imprisoned the sale so enjoined was, however, made and confirmed by said state court; that Hinchman made no answer to his bill of injunction, but his counsel, in making return for the jailer to the writ of habeas corpus, in attempted justification of the imprisonment of plaintiff's counsel for contempt, denied that any part of the land sought to be sold by the circuit court of Logan county by and through Hinchman, its school land commissioner, laid within the boundary limits of his, plaintiff's, 500,000 acres, and therefore he, plaintiff, being satisfied that his injunction bill had been filed through a misapprehension, dismissed the same; that the state appealed from the decree entered September 30, 1897, in its cause against plaintiff, and said decree was reversed, in so far as it fixed the amount of taxes, interest, and costs chargeable to plaintiff in redemption of his 500,000 acres, and in so far as it declared a redemption to have been effected by the sum paid, but affirming the decree in all other particulars, thereby finally and conclusively confirming the plaintiff's title as bounded and located to the 500,000 acres, and destroyed the state's power and that of any of its officers to sell said land or any portion thereof by virtue of section 1, art. 14, of Amendment to the Constitution of the United States; that, after said cause was remanded for further proceedings, he particularly set forth and accurately located such parts of said 500,000 acres as he desired to redeem and offered to pay such taxes, interest, and costs chargeable thereon; that Stoddard and Hall, purchasers under the sale made by the circuit court of Logan county through Hinchman, school commissioner, and to whom had been conveyed 20,000 acres so purchased, by Wilkinson, a commissioner appointed by such circuit court of Logan county to make deed thereto to them, made deed, to one Mullins for a boundary of 20,000 acres or more of land lying within plaintiff's 500,000-acre tract, which boundary Mullins' heirs, after his death, conveyed to defendant, Buskirk, trustee, who filed a petition in the case of State v. Henry C. King et al. (plaintiff's redemption suit referred to), filed exceptions to the commissioner's report filed therein, and on January 11, 1908, the circuit court of Marion county (to which court the cause had been removed from the Wyoming county circuit court) sustained said Buskirk's claim and contentions, and held that, while the 480,000-acre survey did not conflict with the 500,000-acre survey, Stoddard and Hall's deed from Wilkinson did so conflict with the 500,000-acre survey, and conveyed more than 20,000 acres. of land embraced therein, and that said defendant now claims that so much of said 500,000 acres was sold away to him by the state and he has claim of title thereto as against plaintiff; that in April, 1907, Buskirk executed deed to Stafford for said 20,000 acres or more of land.

It is then specifically charged that, treating Hinchman's sale as one of any part of the 500,000 acres, it must be held to be in defiance to the subsisting decrees in the cause of State v. King, made in violation of the injunction then pending in the federal court, inhibiting its making, and an attempted deprivation of plaintiff's property rights, contrary to said section 1, art. 14, of the federal Constitution; that Stoddard and Hall and Buskirk, trustee, and Stafford had full notice by reason of such injunction of all the premises, and that plaintiff's suit was not sooner brought because the deed of the Logan county circuit court's commissioner to Stoddard and Hall did not disclose that the 20,000 acres claimed was within the 500,000-acre survey, and it was not discovered by plaintiff that it was susceptible of such construction until so held by the decree of January 11, 1908, entered by the circuit court of Marion county. The prayer of the bill, in effect, is to set aside the deed to Hall and Stoddard in so far as constituting cloud on or claim of title to plaintiff's land within the 500,000-acre survey.

To this bill demurrers were filed, alleging seven grounds: First, lack of title in plaintiff; second, lack of jurisdiction in the court; third, res adjudicata by the circuit court of Marion county; fourth, laches on the part of plaintiff; fifth, the cause of action does not arise under the laws of the United States; sixth, the bill shows no ground for relief; seventh, bill without equi-

ty. This demurrer was sustained by the court below, the bill dismissed, and this appeal taken.

For the purpose of convenience, the appellant will be referred to as the plaintiff, and the appellee as the defendant.

Maynard F. Stiles, of Charleston, W. Va., for appellant.

Frank Cox, of Morgantown, W. Va., and Wm. R. Lilly, of Huntington, W. Va., for appellees.

Before PRITCHARD, Circuit Judge, and CONNOR and SMITH, District Judges.

PRITCHARD, Circuit Judge (after stating the facts as above). Among other things, it is insisted by the defendant that it appears upon the face of the bill that the matters herein alleged have been finally adjudicated and determined between the plaintiff and the defendant by the decree of the circuit court of Marion county, W. Va., in the case of State v. King et al., 64 W. Va. 620, 63 S. E. 495. This decree is referred to in the bill. The bill states that a decree was rendered in the circuit court of Wyoming county on the 30th day of September, 1897, and an appeal taken from that decree by the state, and the reversal of the decree and the remanding of the cause to the circuit court, also further states that, after the case had been remanded to the circuit court of Wyoming county, it was finally taken to the circuit court of Marion county, and that an amended petition had in the meantime been filed by King. It appears from the bill that the circuit court of Wyoming county had jurisdiction of the parties and of the subject-matter. Among other things are to be found the following allegations in sections 14 and 15:

"That after the filing of said amended petition the said Stoddard and Hall filed a petition in said cause, setting up said deed from said Wilkinson, special commissioner, for part of said 480,000-acre grant, and claiming that it included part of said 500,000-acre grant, and said cause having been referred to a commissioner in chancery, and having been heard before him, said commissioner found and reported that whatever land said Stoddard and Hall had claim to under said deed lay within said 480,000-acre grant and not within said 500,000-acre grant, that said two grants were adjacent tracts with no interlock or conflict of lines of area, and that said deed did not include any of the land claimed by your orator, or any part of said 500,000-acre grant.

"That afterwards said Stoddard and Hall by virtue of their claim under said deed from Wilkinson, commissioner, made a deed to one M. B. Mullins for a boundary of land lying partly within said 500,000-acre grant, and, said Mullins afterwards dying, his father and heirs at law made a deed to defendant Buskirk, trustee, purporting to convey the said land to him, whereupon said Buskirk, trustee, filed a petition in said cause, excepted to the said report of the chancery commissioner, and laid claim to a large quantity of your orator's land and denied the right of your orator to redeem the same, and the right of the state or the court to permit your orator to redeem the same, upon the ground that said land had been sold to said Stoddard and Hall by said state through Hinchman, in said suit of State v. Irwin et al., and conveyed by said deed from Wilkinson, special commissioner."

It is also alleged in paragraph 15 that:

"* * * On the 11th day of January, 1908, the circuit court of Marion county, to which said cause of State of West Virginia against Henry C. King et al., has been removed, sustained said claim and contention and the exceptions to said commissioner's report."

Thus it appears that the defendant Buskirk, trustee, filed a petition in the case of State v. King, supra, in which the right of King to redeem the land was denied, and also alleging that he was the owner of the land by virtue of the sale made by the state to Stoddard and Hall, and also it appears that in that proceeding the right of King to redeem the land now in controversy was denied.

Section 6 of chapter 105 of the Code of West Virginia of 1899, provides that the state may sell lands forfeited under the Constitution of that state, and also contains the following provision authorizing any party in interest to file a petition in any suit wherein such party may claim an interest in the lands involved herein. That portion of the section is in the following language:

"Any person claiming an interest in such land or proceeding thereof not so made the defendant may file his petition in such suit, stating what interest he claims therein, either in open court or before a commissioner in chancery while the suit is pending before him, or at rules if the cause is pending at rules, and shall thereupon become a defendant therein, and may defend and protect his interest, if he has any therein, to the same extent as if he had originally been made party defendant therein. And if at any time during the pendency of any such suit it shall appear to the court that any part of any tract of land in question therein has been sold by the state in a proceeding for the sale of school land, and the taxes regularly paid thereon since such sale, or is held by any person under section 3 of article 13 of the Constitution of this state, the bill as to such part shall be dismissed and the suit proceeded with to a final decree as to the remainder."

As already stated, it is alleged in the bill filed herein that the defendant filed his petition, and thereby raised an issue upon the question which is involved in this suit, to wit, the right of the plaintiff to redeem the land which he now claims. Section 18 of the chapter of the Code of West Virginia from which we have just quoted contains the following provision:

"In every such suit brought under the provisions of this chapter, the court shall have full jurisdiction, power and authority to hear, try and determine all questions of title, possession and boundary which may arise therein, as well as any and all conflicting claims whatever to the real estate in question arising therein."

By virtue of this section of the Code of that state, the circuit court of Marion county had jurisdiction to hear and determine the questions raised by the pleadings in that case; and it appears that the defendant in this action, Buskirk, trustee, filed his petition in that case, except to the report of the chancery commissioner, and denied the right of the state to permit the plaintiff to redeem the land upon the ground that the same had been sold to Stoddard and Hall by the state through Hinchman in the suit of Irwin v. State et al. by a deed from Wilkinson, special commissioner. And it further appears that on the 11th day of January, 1908, the court in that case sustained the claim and the exceptions to the said commissioner's report.

Thus it will be seen that the contention of Buskirk, trustee, that the plaintiff did not have the right to redeem the land in controversy, was sustained by a court of competent jurisdiction. Thus it appears to us that the very questions sought to be litigated in this suit

were passed upon and finally decided in favor of the defendant. The Supreme Court of West Virginia in the case of State v. King, supra, among other things, said:

"Now that King asks to redeem the 20,000 acres as a part of the 500,000-acre grant, we must inquire as to whether or not the state has sold those 20,000 acres. If it has, as alleged, and there is not a new forfeiture of the title so sold, that is a complete denial of the extension of the privilege of redemption to him, and we need to consider no other question arising in the case. As we have stated, clear and certain is it that the 20,000 acres forfeited to the state in the name of Mrs. Pomeroy and in the names of some of her predecessors in title were sold to Stoddard and Hall by a proceeding instituted and carried on in the name of the state through Hinchman, commissioner of school lands. There can be no question as to this. That proceeding was a suit under chapter 105 of the Code. The court directed Hinchman to make sale of this identical land which it ascertained to belong to the state. He did sell to Stoddard and Hall: and through them Buskirk now owns the land. But it is said that Mrs. Pomeroy had no title. That may be. It matters not. The Legislature has not made former absolute title in the one as to whom it is sold as forfeited requisite to such sale's being the only one that can be made. Mrs. Pomeroy had color and claim of title which became forfeited. At any rate, the state had title by the King forfeiture in 1888. And by this King forfeiture it had title to sell if it had none by the Pomeroy forfeiture. What matters the denomination of an erroneous source of title in one's contract of sale if he in fact has title from some proper source? Under whatever name the state sells, it passes title to the land if the state has title from any source. But it is said that the Wilkinson deed is irregular, or that it conveys other land. Be that as it may, our law does not say that only lands regularly deeded by the state or on behalf of the state are barred from the privilege of redemption, but it does distinctly provide that redemption shall not apply to lands held 'by purchase from the state.' Chapter 105, §§ 17 and 20. So we say it is clear to us that the state made sale of the 20,000 acres in question to Stoddard and Hall at a time when it had title by the King forfeiture at least, that by that sale the state is estopped, and that it cannot extend to King the privilege of redeeming these 20,000 acres or such part as may lie within the bounds of his grant, if there has been no subsequent forfeiture.

"King insists that since the Wyoming suit was pending when the Hinchman suit was instituted, and since he was not a party to the latter, the purchase by Stoddard and Hall cannot affect his rights to redeem. But he has no vested right to redeem. So we have held. Judge Brannon elucidates this subject in the opinion filed by him. Under the law, as stated hereinbefore, he shall not be granted the privilege of redemption after the state has held out the land and invited a purchaser therefor, which purchaser has fully complied with the state's offer. To permit redemption under such circumstances would tend to unsettle and not to settle such titles. It would tend to discourage rather than to encourage the payment of taxes and the support of the government. In view of our statutory law we cannot believe that the state was wholly forbidden to institute the Hinchman suit while the Wyoming suit was pending and to sell the land thereby, since that suit was based upon the forfeited Pomeroy and Irwin title, even though we must say, that the sale therein carried to the purchaser the title the state had acquired by the King forfeiture. Nor need we determine whether it was absolutely necessary to make King a formal and direct party to that proceeding. However this may be, it clearly appears that King had knowledge of that suit and could have intervened by a prayer to redeem in ample time before the sale to Stoddard and Hall. The time he should have spent in preparing and filing a petition to redeem and depositing with it the money for such redemption he spent in undertaking to enjoin the sale by process from the federal court. He did not ask to redeem, as the law permitted him to do. He seems to have been bent upon obstruction of the state in producing a revenue from forfeited titles, and not in the payment of money for redemption of his forfeited title.

"But granted that there was irregularity in the sale to Stoddard and Hall,

either by reason of the Wilkinson deed, the lack of deed if there is none, or the absence of King as a party from the Hinchman suit the sale to Stoddard and Hall was validated by section 19, c. 105, of the Code, its very self a legislative grant. The language of that enactment that legislative grant of this land to Stoddard and Hall or their successors is: 'Whatever right, title, interest, and estate the state of West Virginia had to any lands at the date of the sale or conveyance thereof, or instrument purporting to convey the same heretofore made by said state through and by the commissioner of school lands of any county, under an order or decree of the circuit court in any suit or proceeding under said chapter one hundred and five of the Code, however derived or claimed, shall be deemed and held to have passed to and vested in the grantee thereof, whether the land so sold was proceeded against as forfeited, escheated, or as waste and unappropriated land, notwithstanding any irregularity or error in such proceeding or informality in such sale.' The Legislature has full power to dispose of the state's property. In pursuance of a well meant policy, it saw fit by the enactment aforesaid to validate the sale to Stoddard and Hall if it was not before valid, and to vest 'whatever right, title, interest and estate the state of West Virginia had' to the 20,000 acres at the date of the sale thereof. If it was only King's forfeited title that the state had at the date of this sale, that act vested it in Stoddard and Hall, or their successors. We can do nothing but to give effect to this plain legislative grant. It is not unlike the old legislative grant to Dumas, trustee of the Swan lands, which is the very saving of King's title to the Morris grant. Not content with the words aforesaid, the Legislature is more emphatic in these words: 'And all such sales and conveyances are hereby confirmed and made good and valid.' Thereby has been confirmed and validated the Stoddard and Hall title, now owned by Buskirk. The state had the power to give them the land, and deny King the grace of redemption. It did so, by this act, if Stoddard and Hall did not have good title by their purchase aforesaid.

"But has the title of Stoddard and Hall or their successors become forfeited to or vested in the state since the purchase aforesaid? If it has, and the state again owns the land, shall King be permitted to redeem, regardless of the new title created by that sale to Stoddard and Hall? The taxes on the Stoddard and Hall title have been paid. However it appears from a certificate of the Auditor that, for a certain delinquency this title was sold to the state, and then not redeemed at the Auditor's office until two days after the expiration of one year. King insists that, by reason of the failure to pay these delinquent taxes within the year after the said sale to the state, the title became completely vested in the state, and that it is still there. Thus, he says, the state, having title, should allow him to redeem. It seems that it did so vest. The title could not be redeemed by a mere payment on the date certified as aforesaid. But we cannot say that the title is still in the state. We hold that Buskirk, having acquired King's forfeited title, by purchase from the state, and legislative validation and confirmation of the title so purchased, had right superior to that of King to redeem. The state created a new title which it will honor first in the matter of redemption. Buskirk, therefore, was entitled to redeem in perference to King. And, in effect, his motion to dismiss the land from the suit was sufficient in this particular. The redemption money having long ago been paid, and there being only a technical failure to redeem, the state did not resist his motion. It had its taxes and was content. The decree of dismissal of the land operates as a substantial and complete redemption of Buskirk. King cannot complain, because his right was inferior. The court recognized the proper party."

This question has also been passed upon by the Supreme Court of the United States in the case of King v. State of West Virginia, 216 U. S. 99, 30 Sup. Ct. 229, 54 L. Ed. 396. Mr. Justice Holmes in speaking for the court, in that case, among other things, said:

"The defendants in error move to dismiss, and we are of opinion that the motion should be granted. The only serious question in the case, if we assume that King saved it, is whether the West Virginia Constitution and statute are consistent with the fourteenth amendment. But that question was answered

in King v. Mullins, 171 U. S. 404, 18 Sup. Ct. 925, 43 L. Ed. 214. The construction of the state Constitution by the state court as not confined in its operation to title vested and remaining in the state when the Constitution went into effect (which of course is final) is the only natural construction and was to be expected; then, as now, it was obvious that the right to redeem under the statute would not exist in case part of the land had been sold to a junior purchaser, so that in that case there would not be a 'revestiture commensurate with the divestiture,' as it is argued that there should be; and, to say the least, it is not surprising that it is held that the right may be lost by transfer pending the proceedings. The whole discussion upon this point is little more than an attempt in respectful form to reargue by unreal distinctions what was decided in the former case. The case is not open, and we shall discuss it no more."

In view of these decisions, we are clearly of the opinion that the plaintiff, according to his own showing, does not possess the title to the land in controversy, and also that he has not the right to redeem any portion of the same.

Without undertaking to discuss the question as to whether the plaintiff, on the bare right to redeem this tract would be entitled to maintain a bill to remove a cloud from the title to the same (which is very questionable), it clearly appears that the rights of the plaintiff and defendant have been passed upon by a court of competent jurisdiction, and that there has been a final adjudication in favor of the defendant and against the plaintiff. Therefore it necessarily follows that the judgment of the lower court should be affirmed.

Affirmed.